JOHN W. HAUSSERMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23101, 40307. Promulgated May 25, 1931.

*F. C. Fisher, Esq.*, and *William F. Norman, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq., Arthur H. Murray, Esq., Clark T. Brown, Esq., O. Swecker, Esq.,* and *Stanley Suydam, Esq.,* for the respondent.

384

OPINION.

MORRIS: The issues numbered one and two, hereinbefore stated, place in controversy the interpretation of subdivisions one and three of section 262 of the Revenue Acts of 1921, 1924 and 1926, the language of which section in said acts is the same, except that the word "That," inscribed at the beginning of subdivision (a) of the 1921 Act, was deleted in the later acts.

We have found as a fact that more than 80 per centum of the petitioner's income for the years 1920 to 1925, both inclusive, was derived from sources within a possession of the United States, a fact which the respondent has not contested but, in fact, admits. The respondent contends that subdivisions (1) and (3) of section 262 should be read together, that is, in the conjunctive form, and that the petitioner must show, not only that 80 per centum of his income was derived from the Philippines, but also that 50 per centum or more thereof " was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another."

The petitioner contends, on the other hand, that said subdivisions (1) and (3) should be read separately, that is, in the disjunctive form, or, as he expresses it, in the " alternative," and that he is required to establish only one of the two propositions therein con-

tained in order to invoke and enjoy the benefits of section 262, notwithstanding, as he contends, he has complied with the requirements of both subdivisions.

Section 262 of the Revenue Act of 1921 reads as follows:

SEC. 262. (a) That in the case of citizens of the United States or domestic corporations, satisfying the following conditions, gross income means only gross income from sources within the United States—

(1) If 80 per centum or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section) for the three-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States; and

(2) If, in the case of such corporation, 50 per centum or more of its gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States; or

(3) If, in the case of such citizen, 50 per centum or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

(b) Notwithstanding the provisions of subdivision (a) there shall be included in gross income all amounts received by such citizens or corporations within the United States, whether derived from sources within or without the United States.

(c) As used in this section the term "possession of the United States" does not include the Virgin Islands of the United States.

Since the controversy really resolves itself into a question of the statutory interpretation of the section aforesaid, a historical review of the prevailing evils sought to be remedied by the enactment thereof and its legislative history may prove helpful. In thus approaching the matter we do so mindfully " of the varying weight given by the courts to the different phases of legislative history in construing Federal statutes," (*Southern California Loan Association*, 4 B. T. A. 223), but, as we said in that case, "it seems to be well settled that while such legislative history can not be used to add to or take from the body of the statute, it may help in interpreting its meaning." See also *Burkhart Manufacturing Co.*, 9 B. T. A. 1228.

Commenting upon the question of statutory interpretation the Supreme Court of the United States, in *American Net & Twine Co.* v. *Worthington*, 141 U. S. 468, said:

While the statements made and the opinions advanced by the promoters of the act in the legislative body are inadmissible as bearing upon its construction, yet reference to the proceedings of such body may properly be made to inform the court of the exigencies of the fishing interests and the reasons for fixing the duty at this amount. *Jennison* v. *Kirk*, 98 U. S. 453, 459; *Blake* v. *National Banks*, 23 Wall. 307, 317; *The Collector* v. *Richards*, 23 Wall. 246, 258; *Gilmer*

v. *Stone*, 120 U. S. 586, 590; *United States* v. *Union Pacific Railroad*, 91 U. S. 72, 79.

As the petitioner contends, the manner in which citizens of the United States, resident of the Philippine Islands, were taxed under the earlier revenue acts was a matter of great concern. Widespread agitation sprang up from all quarters for some form of relief in order that citizens of the United States residing in the Philippine Islands might be treated as favorably as other residents of the Islands, and so that they might not be hampered in their competition with citizens of other countries, resident of the Philippines, by excessive taxation. In pursuance of such agitation the Philippine legislature adopted Concurrent Resolution numbered (13) on February 9, 1920 (Phil. Pub. Laws, vol. 15, p. 284), reading as follows:

> *Be it resolved by the Senate, the House of Representatives of the Philippines concurring,* That the Resident Commissioners be, and they hereby are, instructed to ask Congress for the amendment of the United States Internal Revenue Act of nineteen hundred and nineteen, in the sense that American citizens who are *bona fide* residents of the Philippine Islands shall not be subject to any income tax greater than that required of other residents of said islands.

The House bill, proposed as the 1921 Act, containing provision for the taxation of a " foreign trader " or a " foreign trade corporation," provided that in the case of such " foreign trader " or " foreign trade corporation " gross income for the purpose of income tax meant only gross income from sources within the United States. The terms " foreign trader " and " foreign trade corporation " were defined to mean:

> The term " foreign trader " means a citizen or resident of the United States or domestic partnership, (1) 80 per centum or more of whose gross income for the three year period ending with the close of the taxable year (or for such part of such period immediately preceding the close of the taxable year as may be applicable) was derived from sources without the United States as determined under section 217, and (2) 50 per centum or more of whose gross income for such period or such part thereof was derived from the active conduct of a business without the United States either on his own account or as the employee or agent of another.

> The term " foreign trade corporation " means a domestic corporation, (1) 80 per centum or more of the gross income of which for the three-year period ending with the close of the taxable year (or for such part of such period as the corporation has been in existence) was derived from sources without the United States as determined under section 217, and (2) 50 per centum or more of the gross income of which for such period or such part thereof was derived from the active conduct of a business without the United States.

Senate amendments numbered 8 and 9 struck out the foregoing definitions, and amendments numbered 157 and 385 struck out the provision limiting gross income of " foreign traders " and " foreign trade corporations." to gross income from sources within the United

States.   See Senate Report No. 275, Part 2, accompanying H. R. 8245.

Section 262 was inserted in the Revenue Act of 1921 by Senate amendment number 561, and became law substantially as introduced by the passage of that act.

When the Revenue Act of 1921 went before the Senate for debate Senator McCumber, speaking of the provisions in the House bill with respect to " foreign traders " and " foreign trade corporations," said:

The committee in adopting the House provision did so with the understanding and expectation that it would assist in carrying on American trade in the foreign possessions and for the purpose of giving American corporations or American traders an equal opportunity to compete in those foreign countries with other foreign corporations, and with the idea that wherever we have an American corporation operating in another country it brings trade not only to this country but also brings trade in respect to our own products to the foreign country.   *   *   *

A British corporation doing business in China or in the Philippine Islands pays no taxes on the profits earned in such foreign country, unless such profits are returned to the home company in Great Britain.   *   *   *   That is the understanding of the committee.   It is the understanding of those who have discussed the subject and filed briefs with the committee.   [Cong. Rec., vol. 61, p. 6540.]

Senator McCumber read into the Congressional Record (vol. 61, p. 6541) excerpts from a brief filed by the National Foreign Trade Council contending that American traders in foreign countries could not compete with foreign rivals if handicapped by burdensome taxation not borne by their competitors.   The Senator read into the Congressional Record (vol. 61, p. 6542) examples of gross inequalities perpetrated by the then existing revenue laws, which are as follows:

There is a French concern in Manila handling American automobiles, tractors, etc.   In 1919 it is reported to have earned a net profit of $600,000.   Upon this it would pay to the Philippine Government an income tax of $77,735.   It paid no taxes upon such income to the French Government.   There is also in Manila an American house engaged in handling automobiles, tractors, etc., in competition with the French concern.   Upon a like volume of business the American house would be compelled under existing law to pay a United States income tax of $375,190.   *   *   *

Senator Smoot, in the course of the debate upon the law, stated (Cong. Rec., vol. 61, p. 6998):

An American citizen doing business in the Philippine Islands is compelled to pay not only the taxes imposed by the Philippine government, but all of the taxes imposed by the Government of the United States.   *   *   *   An Englishman can go into the Philippine Islands and do business, and when he pays his taxes in the Philippine Islands he is not taxed at home.   *   *   *   The

citizens of England compete with Americans in the Philippine Islands. * * * We are trying to put the American business man upon the same footing as the English business man; that is all. * * *

Although it appears clearly from a study of the history surrounding the enactment of section 262 that Congress intended said section to alleviate tax burdens imposed upon citizens of the United States, resident of the Philippine Islands, it is equally clear from the views expressed by various opponents of the proposed legislation that it intended to guard against those who might take advantage of a loosely phrased statute to evade the payment of tax. For instance, it carefully avoided exempting any part of a citizen's income even if derived from sources without the United States, if actually received by such citizen within the United States. Subdivision (b) of section 262, *supra*. See *Porto Rico Fruit Co. et al.*, 16 B. T. A. 778.

The petitioner contends that since the words "United States" are followed by a semicolon, the word "and" following said semicolon pertains grammatically to subdivision (2), relating to corporations, and since the words "United States" in the last line of subdivision (2) are followed by a semicolon, the word "or" following said semicolon belongs grammatically to subdivision (3). With proper deletions to conform to the petitioner's views, the statute would read as follows:

SEC. 262. (a) That in the case of citizens of the United States, * * *, satisfying the following conditions, gross income means only gross income from sources within the United States—

(1) If 80 per centum or more of the gross income of such citizens * * * was derived from sources within a possession of the United States; ~~and~~

(2) ~~If, in the case of such corporation, 50 per centum or more of its gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States;~~ or

(3) If, in the case of such citizen, 50 per centum or more of his gross income * * * was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

We are unable to agree with the petitioner's grammatical construction of the statute. Grammatically, there are several distinct thoughts expressed, but there is but one complete sentence involved, which includes from the beginning of subdivision (a) down to the end of subdivision (3) thereunder, which ends with a period. Therefore, all of the language included within that sentence, although set out in separate subsections, and divided by semicolons, must be read together in order to grasp the true meaning thereof.

There would appear to be no more justification for deleting the word "and," as the petitioner would have us do, from the construction of the sentence than for omitting the word "or," for both were intended to serve very definite purposes.

The semicolons following subdivisions (1) and (2) mark a pause in the entire sentence, slightly greater than had an ordinary comma been used. It seems to us that had the Congress intended separate and disjoined sentences, conveying completed subject matter, it would have used periods instead of the semicolon, thus obviating any possible misunderstanding.

Since, grammatically, subdivisions (a), (1), (2) and (3), must be read together, all being a part of the same complete sentence, we are of the opinion that (2) and (3) must be read conjunctively with (1) as though they were subparagraphs thereunder, but, while (2) and (3) pertain to the same general subject matter, they relate to different things, i. e., " citizens " and " corporations," and were intended to be separated by the disjunctive word ".or."

Following our view of the grammatical construction and taking some slight liberties in the matter of arrangement in order to emphasize and make clear the point of view which we entertain, but not disturbing the punctuation, the section would read:

SEC. 262. (a) That in the ·case of citizens of the United States * * * satisfying the following conditions, .gross income means only gross income from sources within the United States—

(1) If 80 per centum or more of the gross income of such citizen or domestic corporation * * * was derived from sources within a possession of the United States;

*and*

(2) If in the case of such corporation, 50 per centum or more of its gross income * * * was derived from the active conduct of a trade or business within a possession of the United States; or

(3) If in the case of such citizen, 50 per centum or more of his gross income * * * was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

It would seem that to read subdivisions (1) and (3) in the disjunctive would invite just the sort of evasion of tax that the Congress had in mind when the bill was debated. Citizens of the United States, without ever having entered the Philippine Islands, could transfer their bank accounts and so arrange their investments that 80 per centum of their income might accrue from sources within the Philippine Islands and evade the payment of taxes which would ordinarily be imposed upon such citizens. The Congress foresaw this possibility and provided, in effect, that a citizen must, in addition, have earned at least 50 per centum of his gross income from the active conduct of a trade or business within the Philippine Islands " either on his own account or as an employee or agent of another." In other words, the statute was designed, as we have attempted to make clear, for the purpose of relieving those citizens of the United States who were residents of the Philippine Islands

and who were actively engaged in business there in competition with other residents, citizens of other countries.

Clearly, subdivisions (1) and (2), the latter of which pertains only to corporations, must be read in the conjunctive form. That is, a corporation invoking the benefits of that section must show that at least 80 per centum of its gross income was derived from sources within a possession of the United States, and, furthermore, that 50 per centum or more thereof " was derived from the active conduct of a trade or business within a possession of the United States; ". This the petitioner admits. Why should Congress have made a distinction between corporations and citizens in rendering aid? A careful study of the history leading up to the enactment of section 262 fails to disclose that any particular class of taxpayers, namely, *corporations*, was suffering any more or less than any other class, namely, *citizens*. Nor does it appear from our study of the legislative history of said section that Congress intended that one should be treated any differently from the other. Therefore, if, as the petitioner admits, subdivisions (1) and (2), pertaining to corporations, should be read in the conjunctive, why should subdivisions (1) and (3) be read differently? It is our opinion that the section should be administered the same with respect to both.

It is interesting to note, and perhaps strengthening to the view which we hold, that the definition of " foreign trader," referred to hereinabove, which was included in the original House bill to serve the same purpose as section 262, contains language, in substance, the same as subdivisions (1) and (3) of section 262, and that said definition containing parts numbered (1) and (2) are read in the conjunctive with the use of the word " and."

We can not help but believe that it was the clear intention of the Congress to require that everyone enjoying the benefits of section 262 should belong to that class of persons sought to be relieved by the enactment thereof, i. e., citizens of the United States who were residents of the Philippine Islands and devoting their time and energy to business endeavors in competition with certain other classes of residents of said Islands.

Our view of the interpretation of section 262 coincides with the respondent's as set forth in article 1135 of Regulations 62.

Having decided that the petitioner must satisfy subdivisions (1) and (3) of section 262, we must determine whether 50 per centum or more of his gross income was derived from the active conduct of a trade or business within the Philippine Islands " either on his own account or as an employee or agent of another."

There is no doubt but that 50 per centum or more of the petitioner's income was derived from within the Philippine Islands, but

the bulk of his income was earned, not from the active conduct of a trade or business on his " own account," nor as " an employee or agent of another," but as a stockholder of the Benguet Consolidated Mining Company.

We are of the opinion, for the above and foregoing reasons, that the petitioner is not entitled to the benefits of section 262 of the Revenue Acts of 1921, 1924 and 1926, and that the respondent was correct in so holding.

The third numbered issue herein, alleged in the alternative, that the respondent erred in computing the 25 per cent credit for taxes paid for 1923 after deducting the credit for taxes paid to the Philippine Islands instead of computing said credit before deducting the credit for said taxes paid to the Philippine Islands, has been decided adversely to the petitioner in *John Moir et al*, 3 B. T. A. 21, and *David A. Cunningham*, 9 B. T. A. 1050.

*Decision will be entered for the respondent.*