BURKE CONCRETE ACCESSORIES, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3926-69—3928-69.   Filed June 22, 1971.

*Luther J. Avery* and *Edmond J. Thiede,* for the petitioners.
*John Gigounas,* for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $19,-765.72 in the income taxes of petitioner and two of its wholly owned subsidiaries for the taxable year 1965.[2] The only issue before us is whether, in the year in question, a third wholly owned subsidiary properly joined in a consolidated return filed by the affiliated group.

---

[1] Cases of the following petitioners are consolidated herewith: Burke Concrete Accessories, Inc. (successor to Form Ties, Inc.), docket No. 3927–69; Burke Concrete Accessories, Inc. (successor to H & B Concrete Specialties Co.), docket No. 3928–69.

[2] The deficiency in issue was asserted severally against petitioner Burke Concrete Accessories, Inc., and two of its wholly owned subsidiaries, Form Ties, Inc., and H & B Concrete Specialties Co. On Dec. 30, 1966, these two subsidiaries merged with petitioner, and it is agreed that petitioner, as successor in interest to these two subsidiaries, is liable for any deficiencies found by the Court herein. The total deficiency involved is only $19,765.72, as the deficiencies asserted against the subsidiaries represented duplications.

### FINDINGS OF FACT

All of the facts have been stipulated and are found accordingly.

Burke Concrete Accessories, Inc. (hereinafter Burke or petitioner), is a California corporation, whose principal place of business at the time of the filing of the petition herein was in Burlingame, Calif.

Form Ties, Inc., and H & B Concrete Specialties Co. (hereinafter Form Ties and H & B Concrete) were California corporations, which were wholly owned subsidiaries of Burke during 1965. Each of these two subsidiaries had its principal place of business in California during the year in question.

Burke Caribe (hereinafter Caribe) was also a California corporation and a wholly owned subsidiary of Burke during 1965. Caribe had its principal place of business in the City of San Juan, Commonwealth of Puerto Rico, during 1965.

For the taxable year ending December 31, 1965, Burke, Form Ties, H & B Concrete, and Caribe joined in a properly executed consolidated return which was timely filed with the district director of internal revenue, San Francisco, Calif.

During 1965, Caribe did its entire business in the Commonwealth of Puerto Rico, a possession of the United States. During this period, Caribe derived at least 95 percent of its gross income from sources within the Commonwealth of Puerto Rico and at least 90 percent of its gross income was derived from the active conduct of a trade or business within the Commonwealth of Puerto Rico.

For its taxable year ending December 31, 1965, Caribe had a net operating loss of $37,243 and had a qualified investment credit totaling $1,890.52. These items were reflected in the consolidated return as filed.

### OPINION

The factual background of this case is clear-cut. Petitioner had three wholly owned domestic subsidiaries—Form Ties, H & B Concrete, and Caribe. The four corporations filed a consolidated return for the taxable year 1965 in which a net operating loss and qualified investment credit of Caribe were claimed. There is no dispute as to the amounts of such loss and credit or their availability on the consolidated return, if Caribe was eligible to join in that return.

The issue as to Caribe's eligibility turns upon whether Caribe was an "includible corporation" as defined in section 1504(b).[3] Resolution

---

[3] Unless otherwise specified, all references are to the Internal Revenue Code of 1954, as amended.

SEC. 1504. DEFINITIONS.

(b) DEFINITION OF "INCLUDIBLE CORPORATION".—As used in this chapter, the term "includible corporation" means any corporation except—

Footnote continued on following page.

of this issue turns upon the proper interpretation of subparagraph (4) of that section which excludes from that definition "Corporations entitled to the benefits of section 931, by reason of receiving a large percentage of their income from sources within possessions of the United States." Section 931,[4] among other things, provides that, in the

Footnote continued from previous page.

(1) Corporations exempt from taxation under section 501.

(2) Insurance companies subject to taxation under sections 802 or 821.

(3) Foreign corporations.

(4) Corporations *entitled to the benefits of section 931,* by reason of receiving a large percentage of their income from sources within possessions of the United States.

(5) Corporations organized under the China Trade Act, 1922.

(6) Regulated investment companies and real estate investment trusts subject to tax under subchapter M of chapter 1.

[Emphasis added.]

Subpara. (7) was deleted effective Jan. 1, 1969. See Act of Apr. 14, 1966, sec. 4(b), Pub. L. 89–389, 80 Stat. 111, 116.

[4] Sec. 931 provides in pertinent part as follows:

SEC. 931. INCOME FROM SOURCES WITHIN POSSESSIONS OF THE UNITED STATES.

(a) GENERAL RULE.—In the case of citizens of the United States or domestic corporations, gross income means only gross income from sources within the United States if the conditions of both paragraph (1) and paragraph (2) are satisfied:

(1) THREE-YEAR PERIOD.—If 80 percent or more of the gross income of such citizen or domestic corporation (computed without the benefit of this section) for the 3-year period immediately preceding the close of the taxable year (or for such part of such period immediately preceding the close of such taxable year as may be applicable) was derived from sources within a possession of the United States; and

(2) TRADE OR BUSINESS.—If—

(A) in the case of such corporation, 50 percent or more of its gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States; or

(B) in the case of such citizen, 50 percent or more of his gross income (computed without the benefit of this section) for such period or such part thereof was derived from the active conduct of a trade or business within a possession of the United States either on his own account or as an employee or agent of another.

(b) AMOUNTS RECEIVED IN UNITED STATES.—Notwithstanding subsection (a), there shall be included in gross income all amounts received by such citizens or corporations within the United States, whether derived from sources within or without the United States.

(c) DEFINITION.—For purposes of this section, the term "possession of the United States" does not include the Virgin Islands of the United States, and such term when used with respect to citizens of the United States does not include Puerto Rico.

(d) DEDUCTIONS.—

(1) Citizens of the United States *entitled to the benefits of this section* shall have the same deductions as are allowed by section 873 in the case of a nonresident alien individual engaged in trade or business within the United States.

(2) Domestic corporations *entitled to the benefits of this section* shall have the same deductions as are allowed by section 882(c) in the case of a foreign corporation engaged in trade or business within the United States.

(e) DEDUCTION FOR PERSONAL EXEMPTION.—A citizen of the United States *entitled to the benefits of this section* shall be allowed a deduction for only one exemption under section 151.

(f) ALLOWANCE OF DEDUCTIONS AND CREDITS.—Persons *entitled to the benefits of this section* shall receive the benefit of the deductions and credits allowed to them in this subtitle only by filing or causing to be filed with the Secretary or his delegate a true and accurate return of their total income received from all sources in the United States, in the manner prescribed in subtitle F, including therein all the information which the Secretary or his delegate may deem necessary for the calculation of such deductions and credits.

(g) FOREIGN TAX CREDIT.—Persons *entitled to the benefits of this section* shall not be allowed the credits against the tax for taxes of foreign countries and possessions of the United States allowed by section 901.

[Emphasis added.]

case of citizens and domestic corporations, deriving a high percentage of their income from the active conduct of a trade or business within a possession of the United States, gross income means only gross income from sources within the United States and, in effect, disallows deductions allocable to income from such possessions by citizens or corporations "entitled to the benefits of this section." Neither party disputes the proposition that Caribe derived the requisite percentages of gross income set forth in section 931(a) from the active conduct of a trade or business within Puerto Rico, which, as far as domestic corporations are concerned, is considered a "possession of the United States." See sec. 931(c) ; sec. 1.931–1(a) (1), Income Tax Regs.

Petitioner argues that because Caribe had a loss it could derive no "benefits" from section 931. From this, petitioner concludes that Caribe was not "entitled to the benefits of section 931" and therefore was an "includible corporation" which properly joined in the filing of the consolidated return involved herein. Respondent argues that, since Caribe derived the requisite percentages of income from the active conduct of a trade or business within a possession of the United States, it *met the requirements of section 931* and consequently cannot be a member of the consolidated return group. Respondent makes no effort to analyze the considerations involved in resolving this issue, but simply puts forward Rev. Rul. 65–293, 1965–2 C.B. 323, as the fountain of wisdom justifying his position. That ruling announced that, even where a domestic corporation met the requirements of a Western Hemisphere trade corporation, as Caribe did herein,[5] the fact that it also met the requirements of section 931 caused it to be excluded from the definition of "includible corporation." For reasons based upon the statutory language itself, the legislative history, the construction accorded to almost identical language in section 931, and an analysis of other relevant considerations, we agree with petitioner.

At the outset, we note that the synonyms for the noun "benefit" are "profit, advantage, gain, good, avail." See Roget's International Thesaurus sec. 648.1 (9th ed. 1954). Thus, the normal everyday connotation of the phrase "entitled to the benefits" reflects a plus factor. Such being the case, we cannot lightly discard petitioner's assertion that, because there were no "benefits," section 931 entitled it to nothing and section 1504(b) (4) should not be applied. See *Crane* v. *Commissioner*, 331 U.S. 1, 6 (1947) ; *Old Colony R. Co.* v. *Commissioner*, 284 U.S. 552, 561 (1932).

There is no reason to believe that section 1504(b) (4) has operative significance wholly apart from section 931. To be sure, the clause "en-

---

[5] The impact of Western Hemisphere trade corporation status is discussed in greater detail at pp. 597–599 *infra*.

titled to the benefits of section 931," contained in section 1504(b)(4), is followed by the words "by reason of receiving a large percentage of their income from sources within possessions of the United States." From this, it might be argued that simply receiving the requisite amounts of income makes section 1504(b)(4) operative. But this clause at most does no more than add a repetitional reference to section 931(a). There is no indication that it was intended to have any substantive significance. See Revenue Act of 1928, sec. 251(a), 45 Stat. 791; H. Rept. No. 2, 70th Cong., 1st Sess. pp. 20–21 (1927); S. Rept. No. 960, 70th Cong., 1st Sess., pp. 13–15 (1928); H. Rept. No. 1882, 70th Cong., 1st Sess., pp. 16–17 (1928); 69th Cong. Rec. 7874–7875 (1928).

Respondent asserts that all of the other categories of exceptions to the definition of "includible corporation" contained in section 1504(b) are mandatory and that this supports his interpretation that subparagraph (4) mandates the ineligibility of Caribe to join in the consolidated return involved herein. But the fact of the matter is that all of these other categories involve corporations which are governed by substantially different systems of taxation—exempt organizations, insurance companies, foreign corporations, China Trade Act corporations, regulated investment companies, and real estate investment trusts.[6] Caribe, even if it utilized section 931, would not be subject to a *different system* of taxation; certain items would be subject to elimination from the calculation of the tax base to which the usual rates of taxation of domestic corporations are to be applied. We also note that, if section 931 is optional, a point which respondent has conceded at least for the purposes of this case, then section 1504(b)(4) is unlike all the other section 1504(b) exclusions, because none of the other exclusions refers to a tax treatment which is optional with the taxpayer. Consequently, in the other cases, there is no way to avoid the essentially different system of taxation imposed by the Code on exempt organizations, insurance companies, foreign corporations, China Trade Act corporations, regulated investment companies, and real estate investment trusts.

Thus, it appears that the literal wording of section 1504(b)(4) indicates that the existence of a "benefit" under section 931 is a prerequisite to the operative significance of the former section. An examination of section 931 points in the same direction.

First, it is clear from the legislative history of section 931 that it was designed as a relief provision for corporations deriving most of their

---

[6] Exempt organizations were, prior to 1950, entirely excluded from the income tax and have the same status to a large degree even today. A China Trade Act corporation has its special deduction calculated by an unusual proportion related in part to the par value of its shares and conditioned upon the distribution of certain amounts to certain shareholders. See sec. 941.

income from U.S. possessions.[7] To argue, as respondent impliedly does, that the "benefit" is the exclusion from gross income, without regard to the economic effect of such an exclusion, is to give the statute a strange interpretation, inconsistent with its objective. The facts of this case clearly illustrate a situation in which such an exclusion is not beneficial but detrimental.

Second, respondent's own prior interpretations of the predecessors of section 931, namely, statutory provisions appearing as far back as sections 214(b), 217(g), 234(b), and 262 of the Revenue Act of 1921 (42 Stat. 242, 245, 257, and 271), are incompatible with an attempt to define the "benefits" of section 931 as the exclusion without regard to the economic effect of that exclusion. I.T. 3363, 1940–1 C.B. 92;[8] I.T. 3791, 1946–1 C.B. 148; Rev. Rul. 8, 1953–1 C.B. 300. While these rulings dealt with whether an individual would "benefit" from utilizing the provisions allowing an exclusion of gross income received from a possession of the United States, the "entitled to the benefits" language also appeared with respect to corporations from the inception of the exclusionary provision. See Revenue Act of 1921, *supra*, secs. 214(b), 217(g), 234(b), and 262. And an early opinion of this Court clearly indicates that, in applying such language, no distinction should be drawn between individual and corporate taxpayers. See *John W. Haussermann*, 23 B.T.A. 378, 390 (1931), affd. 63 F. 2d 124 (C.A.D.C. 1933). See also Rev. Rul. 65–293, *supra*.

Finally, in amending section 931(d), dealing with deductions, in 1966, Congress indicated that it did not consider that the benefit to be derived from section 931 was synonymous with the exclusion therein provided as far as corporate taxpayers were concerned. See H. Rept. No. 1450, 89th Cong., 2d Sess., p. 41 (1966), 1966–2 C.B. 965, 995; S. Rept. No. 1707, 89th Cong., 2d Sess., p. 48 (1966), 1966–2 C.B. 1059, 1093.

Nothing in the legislative history of section 1504(b)(4) indicates that Congress intended it to have independent operative effect apart from whether any benefits were in fact conferred by section 931. For an exhaustive analysis of such legislative history, as well as that of section 931, see Note, "Consolidating the Loss Operations of Domestic Corporations Operating in United States Possessions," 56 Va. L. Rev. 504–529 (1970).

The original predecessors of sections 1504(b)(4) and 931 first ap-

[7] E.g., H. Rept. No. 350, 67th Cong., 1st Sess. (1921), p. 8, 1939–1 C.B. (Part 2) 168, 174; S. Rept. No. 275, 67th Cong., 1st Sess. (1921), p. 9, 1939–1 C.B. (Part 2) 181, 187. See generally, Note, "Consolidating the Loss Operations of Domestic Corporations Operating in United States Possessions," 56 Va. L. Rev. 505–509 (1970); Surrey, "Current Issues in the Taxation of Corporate Foreign Investment," 56 Col. L. Rev. 831–832 (1956).

[8] This ruling revoked I.T. 3327, 1939–2 C.B. 173, which had specifically held that the language of sec. 251 of the Revenue Act of 1939 (formerly sec. 262 of the Revenue Act of 1921) was mandatory.

peared as sections 240(d) and 262, respectively, of the Revenue Act of 1921 (42 Stat. 260, 271). Under that Act the privilege of filing consolidated returns was, as it is today, confined by section 240 to domestic corporations and subsection (d) provided that "For the purposes of this section a corporation entitled to the benefits of section 262 shall be treated as a foreign corporation." Section 262 (the predecessor of the present section 931) excluded from gross income, under certain conditions, amounts derived by citizens and domestic corporations from sources within a possession of the United States; provisions limiting the deductions of citizens or domestic corporations "entitled to the benefits of section 262," comparable to those now contained in section 931, were contained in sections 214(b) and 234(b), respectively. See 42 Stat. 242, 257. These provisions, other than for minor changes in section and subsection designations, remained in effect until 1928.

In the Revenue Act of 1928, the exclusion from an "includible corporation" for consolidated return purposes, contained in section 240(d) in the 1921 Act, was incorporated in section 141(g) in the following form (see 45 Stat. 831):

(g) CORPORATIONS DERIVING INCOME FROM POSSESSIONS OF UNITED STATES.—
For the purposes of this section a corporation entitled to the benefits of section 251, by reason of receiving a large percentage of its income from possessions of the United States, shall be treated as a foreign corporation.

At the same time, what had been section 262 of the 1921 Act became section 251, incorporating the provisions relating to deductions which had previously been found in other sections (see sec. 251(d), 45 Stat. 850) and added a cross-reference to section 141 in the form of subparagraph (h), reading as follows (see 45 Stat. 851):

(h) AFFILIATION.—A corporation entitled to the benefits of this section shall not be deemed to be affiliated with any corporation within the meaning of section 141 * * *

There is no indication in the committee reports that any substantive significance should be accorded to such restructuring, with the result that either section 141(g) or section 251(d) would appear to be mere surplusage.[9]

The foregoing provisions, dealing with consolidated returns, found their way into sections 141(g) and 251(i) of the Internal Revenue Code of 1939. The next development in the legislative history, insofar as this case is concerned, centers around the Second Revenue Act of 1940. That Act provided for an excess profits tax and, in the process of so doing, accorded to corporations generally the privilege of filing a

---

[9] We have already discussed the addition of the "by reason of" language in sec. 1504(b)(4) which indicates that the implications to be derived from that addition are at most neutral. See pp. 591–592 *supra*.

consolidated excess profits tax return.[10] Section 730(e) as added by section 201 of that Act took the form of adopting the provision contained in section 141(g) of the Internal Revenue Code of 1939, modified as follows:

(e) DEFINITION OF "INCLUDIBLE CORPORATION".—As used in this section, the term "includible corporation" means any corporation except—

(1) Corporations exempt from the tax imposed by this subchapter.

(2) Foreign corporations.

(3) Corporations organized under the China Trade Act, 1922.

(4) Corporations entitled to the benefits of section 251, by reason of receiving a large percentage of their income from possessions of the United States.

(5) Personal service corporations.

(6) Insurance companies subject to taxation under section 201, 204, or 207.

The only reference in the committee reports, dealing with this legislation, is contained in the following material from the conference report (H. Rept. No. 3002, 76th Cong., 3d Sess., p. 54 (1940), 1940–2 C.B. 548, 558–559):

(1) The class of corporations excluded from membership in an affiliated group is expanded to include certain other corporations in addition to those specified in the Senate amendment. As thus expanded, the class of corporations excluded from the affiliated group includes all those corporations which, by reason of the fact that they are themselves exempt from the excess-profits tax, or are taxable on a basis different from that used in the case of corporations generally (as in the case of foreign corporations), or are otherwise allowed special treatment (as in the case of China Trade Act corporations, personal service corporations, and corporations doing business in possessions of the United States), cannot appropriately be associated for tax purposes with corporations not accorded such special treatment. * * *

The foregoing language is the foundation of Rev. Rul. 65–293, *supra*, and is heavily relied upon by respondent herein as supporting his contention that the clause "entitled to the benefits of section 931," contained in section 1504(b)(4), should be construed to incorporate a mandatory "meeting of the requirements" test, rather than the "benefit" standard contended for by petitioner. We disagree. In the first place, we note that section 730(e) related to the filing of consolidated returns in the area of an excess profits tax, which incorporated such unusual concepts as average base period net income, investment capital credit, admissible and nonadmissible assets, etc. It can be argued that, despite the use of language substantially identical to that used with respect to the income tax, Congress could have felt that a more strin-

---

[10] We note in passing that, between 1934 and 1942, the privilege of filing consolidated returns for ordinary income tax purposes was limited to certain railroad corporations.

gent standard should be applied in a situation which presented many complexities not found in the income tax law. But even if we assume that such is not the case, it seems to us that the conference committee did not intend to add a restrictive connotation to the interpretation of "benefits" as used in the statutory clause "entitled to the benefits of" contained in the then existing language of section 141(g) of the Internal Revenue Code of 1939. In using the phrase "class of corporations," the committee clearly seems to be referring to the entire list of corporations excepted from the definition of "includible corporation." Thus the report states that "The class of corporations excluded from membership * * * is expanded" to include two categories of corporations not covered by the Senate amendment (i.e., personal service corporations and insurance companies). See H.R. 10413, 76th Cong., 3d Sess (1940), sec. 729 (as passed by the Senate on Sept. 19, 1940). It then goes on to say that "the class of corporations excluded from the affiliated group includes all those corporations" which have special treatment. We note also that the word "class" is used in the singular rather than the plural, although the latter use would have been more appropriate if the committee in fact had had the intention which respondent attributes to it.

The final change in the legislative development of section 1504 occurred in the Revenue Act of 1942, when Congress reestablished the consolidated return privilege for all corporations and, in phrasing section 141 for income tax purposes, adopted the excess profits tax format of the definition of "includible corporation" contained in section 730 as added by the Second Revenue Act of 1940, instead of reenacting verbatim the format contained in the Internal Revenue Code of 1939. At the same time, the cross-reference to affiliation, contained in section 251(i) of the Internal Revenue Code of 1939, was repealed. Nothing in the legislative history indicates that any substantive change was intended by the rephrasing of the definition of "includible corporation." [11] H. Rept. No. 2333, 77th Cong., 2d Sess., p. 102 (1942); S. Rept. No. 1631, 77th Cong., 2d Sess., p. 134 (1942); H. Rept. No. 2586, 77th Cong., 2d Sess., p. 45 (1942).

We have already pointed out that the phraseology "entitled to the benefits of" in section 1504(b)(4) is identical with that contained in section 931 and that there is nothing in the legislative history to suggest that a different "benefit" was intended in the former than in the

---

[11] An amendment to sec. 251 of the Internal Revenue Code of 1939, contained in the House bill, narrowed the scope of excludable income from sources within a possession of the United States and allowed a domestic corporation to opt out of the new provisions and to be treated as an "includible corporation" under sec. 141. The Senate eliminated these provisions without addressing itself to the optional aspect of the House bill. It therefore throws no light on the issue before us. For a detailed discussion of this chapter in the legislative history see Note, *supra*, 56 Va. L. Rev. 513.

latter. Such circumstances support the position that the same meaning should be accorded to the language in both cases. See *United States* v. *Olympic Radio and Television*, 349 U.S. 232, 235 (1955); *Estate of Robert J. Cuddihy*, 32 T.C. 1171, 1176 (1959). In addition, respondent's interpretation of the language in question in I.T. 3363, *supra*, should be given considerable weight in a judicial determination of its meaning. *Hanover Bank* v. *Commissioner*, 369 U.S. 672 (1962); *Helvering* v. *Winmill*, 305 U.S. 79 (1938). This is particularly true where, as is the case herein, Congress amended the predecessor of section 931 on several occasions prior to the 1954 codification.[12] E.g., *Helvering* v. *Reynolds Co.*, 306 U.S. 110 (1939); cf. *Estate of Richard R. Wilbur*, 43 T.C. 322 (1964). See, 1 Mertens, Law of Federal Income Taxation sec. 3.22 (Malone ed.). That the administrative interpretation involved a different section of the Code does not inhibit the application of the guideline that Congress has adopted such interpretation with respect to the section in question in which the same language appears. *Blenheim Co.* v. *Commissioner*, 125 F. 2d 906 (C.A. 4, 1942), affirming 42 B.T.A. 1248 (1940). Granted that the administrative interpretation-legislative reenactment syndrome may not be deserving of inevitable absolutism in all situations (see 1 Mertens, *supra*), we are satisfied that it may properly be applied in the instant case, especially since sections 1504(b) and 931 have been companion provisions since their inception.

The difficulty with respondent's position herein is highlighted when one considers its impact in light of the fact that the parties herein agree that Caribe, because of its Puerto Rican operations, was a Western Hemisphere trade corporation. Under sections 921 and 922 of the Internal Revenue Code of 1954,[13] such a corporation is granted a

---

[12] Revenue Act of 1940, sec. 6(c), 54 Stat. 519; Revenue Act of 1941, sec. 111(c), 55 Stat. 696; Revenue Act of 1942, sec. 131(a)(3), 56 Stat. 827; Individual Income Tax Act of 1944, sec. 10(h), 58 Stat. 240; Revenue Act of 1945, sec. 102(b)(9), 59 Stat. 559.

[13] SEC. 921. DEFINITION OF WESTERN HEMISPHERE TRADE CORPORATIONS.

For purposes of this subtitle, the term "Western Hemisphere trade corporation" means a domestic corporation all of whose business (other than incidental purchases) is done in any country or countries in North, Central, or South America, or in the West Indies, and which satisfies the following conditions:

(1) if 95 percent or more of the gross income of such domestic corporation for the 3-year period immediately preceding the close of the taxable year (or for such part of such period during which the corporation was in existence) was derived from sources without the United States; and

(2) if 90 percent or more of its gross income for such period or such part thereof was derived from the active conduct of a trade or business.

For any taxable year beginning prior to January 1, 1954, the determination as to whether any corporation meets the requirements of section 109 of the Internal Revenue Code of 1939 shall be made as if this section had not been enacted and without inferences drawn from the fact that this section is not expressly made applicable with respect to taxable years beginning prior to January 1, 1954.

SEC. 922. SPECIAL DEDUCTION.

Footnote continued on following page.

special deduction in computing taxable income. Respondent has recognized that a corporation operating in Puerto Rico may also qualify for treatment as a Western Hemisphere trade corporation (see Rev. Rul. 55–105, 1955–1 C.B. 94) and both the statute (sec. 1503(b)(1)) and respondent's regulations provide that a Western Hemisphere trade corporation, which is a member of an affiliated group, must be included in a consolidated return. See secs. 1.1502–2A, 1.1502–30A(b)(1), and 1.1502–31A(a)(15), Income Tax Regs., in effect for taxable years beginning before Jan. 1, 1966, and secs. 1.1502–1(a), 1.1502–4(c), 1.1502–11(f), and 1.1502–25, Income Tax Regs., in effect for taxable years beginning after that date.

We need not now decide whether a corporation which qualifies with respect to the gross income and active conduct of a trade or business provisions of section 921 may choose not to avail itself of the benefits of section 922.[14] Caribe has not made such a choice. In Rev. Rul. 65–293, *supra*, respondent ruled that, if a corporation satisfied the gross income and active conduct of a trade or business requirements of section 921 *and* section 931, it would be considered as "meeting the requirements" of both sections and consequently would be specifically excluded from the term "includible corporation" within the meaning of section 1504 (b) and ineligible to join in a consolidated return. Respondent asserts that Rev. Rul. 65–293 is correct and that therefore Caribe cannot join in the consolidated return involved herein. Respondent's position produces a curiously illogical result. Since a Western Hemisphere trade corporation is concededly an "includible corporation," if Caribe had operated in the Bahamas, it would clearly have been eligible to join in the return. But, because it operated in Puerto Rico and qualified under section 931, as well as 921, it would—if respondent's position were accepted—thereby lose its eligibility even though the percentages of gross income requirements for a Western Hemisphere trade corporation are larger (95 percent and 90 percent) than that for a section 931 corporation (80 percent and 50 percent). The fact is that, in most, if not all, cases a corporation which derives sufficient income from a pos-

---

Footnote continued from previous page.

In the case of a Western Hemisphere trade corporation there shall be allowed as a deduction in computing taxable income an amount computed as follows—

 (1) First determine the taxable income of such corporation computed without regard to this section.

 (2) Then multiply the amount determined under paragraph (1) by the fraction—

  (A) the numerator of which is 14 percent, and

  (B) the denominator of which is that percentage which equals the sum of the normal tax rate and the surtax rate for the taxable year prescribed by section 11.

[14] We note that sec. 921 uses the clause "meets the requirements" in dealing with the effect of that sec. on the application of its predecessor, sec. 109 of the Internal Revenue Code of 1939. In Rev. Rul. 63–224, 1963–2 C.B. 297, respondent simply ruled that *if* a Corporation elected to come under sec. 931, it could not *also* obtain the special deduction available to a Western Hemisphere trade corporation.

session of the United States, located in the Western Hemisphere, to satisfy section 921(1) will also derive sufficient income to satisfy section 931(a) (1).[15] To hold that, under such circumstances, such a corporation should not be included in a consolidated return is to discriminate against a possession corporation contrary to the intendment of Congress to grant domestic corporations tax advantages when they operated in a U.S. possession [16] and to the clear mandate of Congress that Western Hemisphere trade corporations were to be included in a consolidated return. See p. 598 *supra.* Respondent deals with this anomalous situation simply by asserting that the fact that Caribe met the requirements of section 931 first is determinative and the subsequent fulfillment of the conditions of section 921 is immaterial. Such an assertion is like saying that a horse which is in second place at the halfway mark cannot win the race even though it crosses the finish line first. We are not disposed to hold that Congress intended to legislate so eccentrically. See *J. C. Penney Co.* v. *Commissioner,* 312 F. 2d 65, 68 (C.A. 2, 1962), affirming 37 T.C. 1013 (1962).

We are not unaware of respondent's concern that a decision for petitioner herein may produce problems, in that it conceivably would permit a corporation, which could obtain no benefit from section 931 and had been included in a consolidated return for one year, to avoid joining in a consolidated return for a later year by electing to be treated as a section 931 corporation. But this problem would appear to exist, even if we were to adopt respondent's position, since his "meeting of the requirements" test of section 931 and, through it, the applicability of section 1504(b) (4), would seem to be controllable through the percentage-of-income requirement of section 931(a) (1).[17] Moreover, although we expressly do not decide the point, it is conceivable that respondent, through the broad discretion conferred upon him in the consolidated return area, might be able to require that, once a corporation joined in a consolidated return, it would henceforth be unable to claim section 931 status and thereby be excluded from a consolidated return of the affiliated group for a subsequent year in which the corporation remained a member of that group. See Note, *supra,* 56 Va. L. Rev. 527–528. Nor are we impressed with the argument that a decision for petitioners herein will enable the loss of Caribe to be offset against the income of the other members of the affiliated group. This is not an

---

[15] There may be a situation where such a corporation may not exclude all its income received from a possession of the United States because all or part of such income was received within the United States, but its qualification under the conditions of sec. 931(a) is unaffected. See sec. 931(b).

[16] See H. Rept. No. 350, *supra,* p. 8 ; S. Rept. No. 275, *supra,* p. 9.

[17] There is no suggestion herein that the operations of Caribe were deliberately manipulated to produce offsetting loss utilized on the consolidated return herein and we express no opinion as to what our decision would be under such circumstances. Compare cases collected in 8A Mertens, Law of Federal Income Taxation sec. 46.09 (Zimet ed.).

unusual consequence of the consolidated return provisions of the Internal Revenue Code and is in furtherance of the underlying rationale of those provisions, namely, to reflect more clearly the economic realities of multiple incorporations.[18] In light of the foregoing, we hold that Rev. Rul. 65-293, *supra*, constitutes no more than a self-serving, *ipse dixit* pronouncement by respondent and that it is not a valid interpretation of the applicable statutory provisions.

We hold that, since Caribe could derive no benefit from section 931, it properly joined in the filing of the consolidated return involved herein.[19]

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

QUEALY, *J.*, dissents.

---

[18] See, e.g., S. Rept. No. 617, 65th Cong., 3d Sess. (1918), 1939–1 C.B. (Part 2) 117, 123; 57 Cong. Rec. 549 (1918) (remarks of Mr. Penrose); S. Rept. No. 960, 70th Cong., 1st Sess. (1928), 1939–1 C.B. (Part 2) 409, 417–419; 69 Cong. Rec. 653 (1927) (remarks of Mr. Tilson); S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 496, 503.

[19] We do not reach the question whether, if an otherwise qualified affiliated corporation would obtain some "benefits" by utilizing sec. 931, but greater "benefits" by not doing so, such optional quality as sec. 931 may have carries over to sec. 1504(b) so as to permit such a corporation to join in a consolidated return. Compare I.T. 3363, 1940–1 C.B. 92; I.T. 3791, 1946–1 C.B. 148; Rev. Rul. 8, 1953–1 C.B. 300; Rev. Rul. 65–293, 1965–2 C.B. 323.