FARMERS TRACTOR & EQUIPMENT
COMPANY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. PB-62-C-26.

United States District Court
E. D. Arkansas,
Pine Bluff Division.

Sept. 30, 1963.

W. B. Brady, and J. G. Williamson, Rose, Meek, House, Barron & Nash, Little Rock, Ark., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Robert L. Waters, Atty., Tax Div., Dept. of Justice, Fort Worth, Tex., Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

This is a suit for a refund of income tax deficiencies assessed against plaintiff with respect to 1957 and 1958 and which plaintiff paid in March 1960. The facts have been stipulated, and the case has been submitted on the pleadings, the stipulation, and written briefs.

Plaintiff, an Arkansas corporation having its principal place of business at Pine Bluff, Arkansas, is a retail dealer in farm machinery and equipment, handling principally' the John Deere products manufactured by John Deere Plow Co. of St. Louis, Missouri. Plaintiff, during the times here pertinent, filed its federal income tax returns on the calendar year basis and followed an accrual method of accounting.

Like many equipment dealers similarly situated, plaintiff sells its machinery to farmers on credit. The purchase money notes given by the farmers are sold by plaintiff to John Deere. John Deere withholds as security a portion of the proceeds of the notes which it purchases,

and credits the withholdings to a dealer's reserve account of plaintiff. While the record does not contain a copy of the contract in force between plaintiff and John Deere, it is inferable that the balance in the dealer's reserve account is to be maintained at a certain level with respect to outstanding notes, and that when the balance in the account exceeds that level, plaintiff is entitled to withdraw the excess in cash. When the dealer's reserve account is credited, the credit is a payable on the books of John Deere, and presumably the credit is set up as a receivable on the books of plaintiff.

Prior to the decision of the Supreme Court of the United States in Hansen v. Commissioner, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360, decided June 22, 1959, many accrual system retail dealers in property of various kinds who did not carry their own paper and who had dealer's reserve accounts on the books of manufacturers or finance companies did not report as accrued income credits to their dealer reserve accounts in the years in which the credits were given. Rather, they would wait until they received cash payments out of their reserve accounts and would report such receipts as income in the years in which the payments were received. A reasonable basis for such treatment was to be found in a line of judicial decisions, of which Glover v. Commissioner, 8 Cir., 253 F.2d 735, and Hansen v. Commissioner, 9 Cir., 258 F. 2d 585, are illustrative. On the other hand, the Tax Court of the United States had consistently held that accrual basis taxpayers should report dealer reserve income in the years in which it was credited to them, see cases cited in Hansen v. Commissioner, supra, 258 F.2d at 587, n. 1, and the Court of Appeals for the Seventh Circuit had so held in Baird v. Commissioner, 7 Cir., 256 F.2d 918.

In 1959 the Supreme Court reviewed, Hansen, Baird, and Glover and in Hansen v. Commissioner, supra, reversed the Eighth and Ninth Circuits and affirmed the Seventh Circuit. In Hansen the Supreme Court established that the sums credited to dealer reserve accounts became the property of the retail dealers in the years in which the credits were made, and that accrual basis dealers were required to so treat the credits.

Plaintiff first received a dealer reserve credit from John Deere in 1956 prior to the decision of the Court of Appeals in the Glover case, and when plaintiff filed its 1956 return in 1957, it included that credit in its gross income, and paid in full the tax shown by the return to be due.

In 1957 plaintiff received dealer reserve credits amounting to $13,545.59, and when it filed its original return in 1958 it included that sum in its gross income. When that return was filed, however, plaintiff for some undisclosed reason paid only one half of the reported tax, and following the Court of Appeals' decision in Glover, which was handed' down on April 23, 1958, plaintiff filed an amended return for 1957 in which it excluded from its income the dealer reserve credit previously reported.

In 1958 plaintiff's dealer's reserve account was credited with $14,317.91, and when plaintiff filed its 1958 return in March 1959 it did not include the amount of that credit as income.

The record before the Court does not indicate that in either 1957 or 1958 plaintiff received any cash payments based on previous credits to its dealer's reserve account, or that it reported any cash dealer reserve income as taxable income.

Following the decision of the Supreme Court in Hansen the Commissioner of Internal Revenue assessed deficiencies against plaintiff with respect to both 1957 and 1958 based upon plaintiff's improper treatment of its dealer reserve credits. The deficiency assessed for 1957 was $7,043.70, and that for 1958 was $7,445.31. Plaintiff paid both of those assessments, plus interest, in March 1960.

The Supreme Court's decision in the Hansen case had a severe financial impact on many dealers, and on May 13,

1960, the Congress for the purpose of mitigating that impact adopted the Dealer Reserve Income Adjustment Act of 1960, P.L. 86–459, 74 Stat. 124, 26 U.S. C.A. § 481 note. Between the time when plaintiff paid the deficiency assessments and the time when Congress adopted the Act just mentioned plaintiff did not file and apparently did not contemplate the filing of any claims for refunds with respect to the assessments. However, following the passage of the Act plaintiff invoked the provisions of section 4 of the Act, hereinafter discussed, and filed claims for refund. When the claims were denied, this suit was filed.

Plaintiff does not, and indeed in the light of Hansen cannot, question the validity of the 1957 and 1958 deficiencies, which were lawful assessments and which were paid in full. While conceding that the assessments were correct originally, plaintiff now contends that under section 4 of the Act it is entitled to have the amounts paid by it refunded in a lump sum at this time, to be paid back into the Treasury without interest in ten equal annual installments. The Government denies that plaintiff is entitled to the relief sought. The problem presented is in the last analysis one of statutory construction.

Section 2 of the Act provides that it shall apply to any person who, for his most recent taxable year ending on or before June 22, 1959—

"(1) computed, or was required to compute, taxable income under an accrual method of accounting,

"(2) treated any dealer reserve income, which should have been taken into account (under the accrual method of accounting) for such taxable year, as accruable for a subsequent taxable year, and

"(3) before September 1, 1960, makes an election under section 3(a) or 4(a) of this Act."

Section 3 of the Act permits a taxpayer affected by the Hansen decision to have the required adjustments made by the application of section 481 of the Internal Revenue Code of 1954. Since plaintiff did not make an election under section 3 the details of the method prescribed by that section need not be mentioned here.

Section 4(a), under which plaintiff's election was filed, provides that an election filed under it shall apply to all taxable years ending on or before June 22, 1959, for which the assessment of any deficiency or for which refund or credit of any overpayment whichever is applicable, was not, on June 21, 1959, prevented by the operation of any law or rule of law.

Section 4(b) (1) provides that if adjustments called for by section 4(b) (2) result in a "net increase in tax" due solely to the election to proceed under section 4, and if the net increase in tax exceeds $2500, the taxpayer may elect to pay "in two or more (but not to exceed 10) equal annual installments *any portion of such net increase which (on the date of such election) is unpaid.*" (Emphasis added.)

Section 4(b) (2) then defines a "net increase in tax" as being "the amount (if any) by which—

"(A) the sum of the increases in tax (including interest) for all taxable years to which the election applies and which is attributable to the election, exceeds

"(B) the sum of the decreases in tax (including interest) for all taxable years to which the election applies and which is attributable to the election."

The wording of sections 4(a) and 4(b) of the Act gives the Court no particular trouble, and it seems clear to the Court that the scheme of tax relief or mitigation prescribed by those subsections is a simple one and may be summarized as follows:

■ Where a taxpayer affected by the Hansen decision elects to proceed under section 4 rather than under section 3 of the Act, the adjustments called for by Hansen are to be made on a year to year basis for each of the years affected by

the election. In certain years the effect of the adjustments may be to increase the taxpayer's liabilities in other years the adjustments may reduce them.[1] The annual adjustments having been made, a final tax balance is struck between the Government and the taxpayer. Conceivably, the balance may be in favor of the taxpayer, in which case he would be entitled to a refund. On the other hand, if the final balance shows a "net increase in tax" in excess of $2500, the taxpayer may elect to discharge in installments "any portion of such net increase which * * * is unpaid."

What has just been said serves to bring the issue before the Court into clearer focus. Plaintiff is not seeking any "adjustments" of its 1957 and 1958 tax liabilities, and it owes the Government nothing as far as those years are concerned. The narrow question for decision, then, is whether plaintiff which had paid the exact amount of its "net increase in tax" prior to making its statutory election and actually prior to the passage of the Act is now entitled to obtain a present refund of the sums paid by it coupled with an obligation to repay the same deficiencies in installments over a ten year period. The question is not whether plaintiff is entitled to "the benefits of the Act," but whether it is entitled to the specific relief sought.

■■ It is not the function of the Court in this case to rewrite the Act or to amend it in the guise of construing it. It is the Court's duty to construe and apply the statute as written, and when this is done, the Court finds itself in agreement with the Government that the installment payments provision of section 4 presupposes the existence of a "net increase in tax" which is unpaid in whole or in part, and that the provision in question is inapplicable where, as here, the net increase was fully paid at the time of the election.

If this construction produces an injustice or an inequity to taxpayers situated as is the plaintiff, the fault lies in the statute itself and is beyond the power of this Court to correct. But, actually the Court does not think that its construction of the law produces an unjust or inequitable result, or one which the Congress did not intend. It does not follow from the fact that Congress was willing to permit a taxpayer-debtor to discharge his unpaid obligation in installments that Congress was willing to make a refund of money to some other taxpayer who had discharged his obligation merely for the purpose of letting that taxpayer repay the money in installments.

The Court has considered and rejects the arguments of plaintiff based upon the legislative history of the Act, upon their attempted explanation of the phrase "which (on the date of such election) is unpaid," and upon Income Tax Regulations, Section 1.9002–1(b). All of those arguments, it seems to the Court, proceed upon the fallacious theory that the Government is seeking to deprive plaintiff of a benefit under the Act, whereas in truth the Act simply does not confer upon plaintiff the particular benefit which plaintiff seeks.

It is possible that had plaintiff anticipated that the Act would be passed and that it would have the installment payments provision in it plaintiff would not have paid the assessments when it did and thus might have been able to

---

1. At the risk of some oversimplification, it may be said that whether the adjustments for each year would increase or decrease the tax liability for that year would depend upon the extent to which the taxpayer while not including dealer reserve credits in his income, as he should have done, did in fact report dealer reserve cash receipts, which should have been reported in a prior year or in prior years. Again at the risk of oversimplification, it may be said in a general way that if the credits entered in the taxpayer's dealer's reserve account in a given year exceeded the cash dealer reserve income erroneously reported in that year, the result would be a tax increase; conversely, if the cash dealer reserve income exceeded dealer reserve credits, the tax liability for the year in question would be reduced.

have paid them ultimately in installments. But, the fact remains that plaintiff did pay the assessments, and the Act provides for installment payments only with respect to unpaid portions of net tax increases as determined under the statute. Plaintiff certainly had no right to have Congress pass a statute from which plaintiff would benefit, and the statute which Congress did pass does not in fact benefit plaintiff.

A judgment will be entered dismissing the complaint at plaintiff's cost.