LASTARMCO, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12801–81.    Filed November 15, 1982.

*Richard P. Wolfe* and *Benjamin B. Blanchet*, for the petitioner.
*Linda K. West*, for the respondent.

OPINION

DAWSON, *Judge*: Respondent determined deficiencies in petitioner's Federal income taxes for the fiscal years ended June 30, 1972, and June 30, 1975, in the amounts of $9,882 and $8,245, respectively.

---

This case was submitted fully stipulated pursuant to Rule 122.[1] The stipulation of facts and attached exhibits are incorporated herein by reference.

Respondent determined that petitioner is limited by section 246(b)(1)[2] to a lower section 243(a)(1) deduction for dividends received by petitioner during its fiscal year ended June 30, 1975 (hereinafter the 1975 year), than was claimed. In that year, petitioner was also entitled to a percentage depletion allowance under section 613A(c), which is in turn limited by section 613A(d)(1). This controversy stems from the fact that both sections 246(b)(1) and 613(A)(d)(1) limit petitioner's deductions for dividends received and depletion allowance, respectively, to a percentage of "taxable income." The following issues are presented for decision:

(1) The method that should be used in calculating whether or not petitioner experienced a net operating loss in the fiscal year ended June 30, 1975. In the event it is determined that there was no net operating loss in the 1975 year, then:

(2) The method that should be used in applying the limitations contained in sections 613A(d)(1) and 246(b)(1), both of which are stated as a percentage of taxable income, to the petitioner's income and deductions for the 1975 year.

Petitioner is Lastarmco, Inc., a Louisiana corporation whose principal place of business was Abbeville, La., at the time that it filed its petition herein.

Lastarmco bottles and markets soft drinks under franchise agreements with different national brands, as well as its own house brand. It also engages in investments. Petitioner timely filed U.S. corporation income tax returns for its fiscal years ended June 30, 1972, and June 30, 1975, with the Internal Revenue Service Center in Austin, Tex.

Section 243(a)(1) provides that a corporation may deduct an amount equal to 85 percent of the amounts received as dividends from domestic corporations, with certain exceptions. Section 246(b)(1) imposes a limitation on the deduction allowed by section 243(a)(1). The dividends-received deduction is limit-

---

[1]All references to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

ed by section 246(b)(1) to 85 percent of taxable income computed without regard to any net operating loss deduction (sec. 172), dividends-received deduction (sec. 243, 244, 245, or 247), or capital loss carryback (sec. 1212). None of these sections affects petitioner in the instant case, with the exception of section 243. According to section 246(b)(2), the limitation on dividends received does not apply in a year for which the taxpayer has a net operating loss. Section 613A generally repealed the allowance of percentage depletion in the case of oil and gas wells. However, section 613A(c) exempts independent producers and royalty owners, a category which includes petitioner. Section 613A(d)(1) limits the 613A(c) deduction to 65 percent of taxable income computed without regard to any depletion deduction and certain other deductions not here relevant.

This dispute arises because, in its 1975 year, petitioner was entitled to deductions for both dividends received pursuant to section 243(a)(1) and percentage depletion pursuant to section 613A(c). Each of these deductions is limited to a percentage of *taxable income*[3] (computed without regard to certain deductions). In the case of a corporation, taxable income is defined by section 63(a) as "gross income minus the deductions allowed by this chapter." Therefore, in order to determine taxable income for pupposes of applying the depletion allowance limitation under section 613A(d)(1), we must first deduct the dividends-received deduction. But we cannot determine what the latter is until we know what taxable income is for purposes of applying the section 246(b)(1) limitation. That, in turn, requires us to first deduct the percentage-depletion allowance, which is limited by section 613A(d)(1) to a percentage of taxable income. So we have come full circle, as we cannot deduct percentage depletion until we determine taxable income, which is what our original goal was. It appears that an ordering provision is necessary to determine which deduction and corresponding limitation is to be taken first. However, upon enacting section 613A(c), Congress failed to provide such guidance. This created, as respondent claims, a "gap" in the statutory framework.

---

[3]For reasons to be explored below, we stress the phrase "taxable income."

For the 1975 year, petitioner received dividends described in section 243(a)(1) in the amount of $489,402. In its original 1975 return, petitioner claimed dividends received of $503,596,[4] of which: (a) $14,194 was properly recharacterized by respondent as a nontaxable distribution under section 301(c)(1) and (2); and (b) $415,992 was allowable as a deduction under section 243(a)(1) without taking into account the limitation contained in section 246(b)(1).

For the 1975 year, petitioner was also entitled to an allowance for percentage depletion under section 613A(c) in the amount of $58,049, without taking into account the limitation contained in section 613A(d)(1). Petitioner claimed as a deduction the full $58,049 in its 1975 return. Also in the 1975 year, petitioner earned an investment tax credit under section 38 in the amount of $10,237. It is agreed by the parties that petitioner's taxable income for the 1975 year without regard to the deductions for dividends received and percentage depletion is $470,980.

In computing whether it had taxable income for the 1975 year, petitioner first calculated the deduction for percentage depletion after taking into consideration the limitation of that deduction to 65 percent of petitioner's taxable income under section 613A(d)(1). "Taxable income" for this purpose was computed in accordance with section 613A(d)(1), but without applying the limitation contained in section 246(b)(1), nor by subtracting the dividends-received deduction. After first subtracting the percentage-depletion deduction of $58,049 from its

---

[4] In the stipulation of facts, both parties assert petitioner "claimed a *deduction* for dividends received of $503,596." (Emphasis supplied.) This is contrary to the record. We hold the pertinent figures are as shown below:

| | |
|---|---|
| Original amount claimed as dividends received (eligible for 85% exclusion) | $503,596 |
| Original sec. 243(a)(1) deduction claimed (dividends received multiplied by 85%) | 428,057 |
| Redetermined amount of dividends received | 503,596 |
| Less recharacterized amount | (14,194) · |
| Total dividends received eligible for sec. 243(a)(1) deduction | 489,402 |
| Multiplied by 85% | ×0.85 |
| Total sec. 243(a)(1) deduction without regard to sec. 246(b)(1) | 415,992 |

taxable income, petitioner then subtracted the full section 243(a)(1) deduction of $415,992 from the balance, in accordance with section 1.246–2(b), Income Tax Regs. Consequently, petitioner determined that this produced a net operating loss for the taxable year,[5] and therefore, in accordance with section 246(b)(2), did not apply the limitation of section 246(b)(1). Since petitioner thought it had a net operating loss in the 1975 year, it did not utilize its investment tax credit, but instead claimed that the credit earned in that year should be carried back to the first available year (the fiscal year ended June 30, 1972) under section 46(b). Petitioner timely filed a corporate applica-

---

[5]Computed as follows:

| | | |
|---|---|---:|
| (A) | Amount of dividends received eligible for sec. 243(a)(1) deduction | $489,402 |
| (B) | Amount of sec. 243(a)(1) deduction without regard to sec. 246(b)(1) (line A × 85%) | 415,992 |
| (C) | Petitioner's income before taking either the sec. 243(a)(1) or 613A(c) deduction | 470,980 |
| (D) | Theoretical limitation on percentage-depletion allowance under sec. 613A(d)(1) (line C × 0.218[1]) | 102,674 |
| (E) | Actual amount of percentage depletion allowed pursuant to sec. 613A(c) | 58,049 |
| (F) | Taxable income before deduction for dividends received (C minus the lesser of D or E) | 412,931 |
| (G) | Computed limitation on dividends received (line F × 85%[2]) | 350,991 |
| (H) | Theoretical limitation on dividends received (line C × 0.665[1]) | 313,202 |

| | |
|---|---:|
| Taxable income before deductions, etc. (line C) | 470,980 |
| Less: The lesser of line D or E | (58,049) |
| Taxable income before dividends-received deduction (line F) | 412,931 |
| Less: Dividends-received deduction (line B) | 415,992 |
| Taxable income (net operating loss) | (3,061) |

[1] See note 7 *infra.*
[2] See note 10 *infra.*

The foregoing figures and their corresponding line references shall be referred to throughout the opinion.

tion for tentative refund from carryback of unused investment tax credit for its tax liability relating to its fiscal year ended June 30, 1972 (hereinafter the 1972 year). In addition, the 1975 net operating loss would be carried back to the 1972 year.

After the beginning of this dispute, the Internal Revenue Service issued a Technical Advice Memorandum (TAM) dated October 5, 1978, which concluded that in petitioner's 1975 year (a) the full deduction for dividends received that is allowed by section 243(a)(1) should have been claimed *first* before the deduction for percentage depletion, and (b) the section 613A(d)(1) limitation of the percentage-depletion deduction to 65 percent of petitioner's taxable income should be applied to the balance of petitioner's taxable income remaining *after* subtraction of the full dividends-received deduction.[6] This method of calculation resulted in a determination that no net operating loss existed for petitioner's 1975 year (see note 6 *supra*). Since respondent determined that no net operating loss resulted, he concluded section 246(b)(2) had no application to the calculation of petitioner's income tax liability on its 1975 return.

Believing there was taxable income in 1975, respondent determined that the limitations contained in sections 246(b)(1) and 613A(d)(1) (each of which is stated as a percentage of taxable income) were therefore applicable. Because neither the Code nor the regulations provide a clear method for calculating the limitations, respondent urges that such congressional silence was a "mandate" that the limitations must

---

[6]Using the figures established in note 5 above, respondent claims the correct method is as follows:

| | | |
|---|---|---|
| Taxable income before deductions, etc. (line C) | ................. | $470,980 |
| Less: Maximum possible dividends-received deduction (line B) | ............................................... | 415,992 |
| (I) Taxable income before percentage depletion deduction | ....... | 54,988 |
| Less: Depletion deduction Lesser of: (1) Sec. 613A(d)(1) limit, which is line I × 65% = 35,742; or (2) actual depletion allowance (line E) = 58,049 | ................................. | 35,742 |
| Taxable income[1] | ................................................. | 19,246 |

[1]Though no title was given to this number in respondent's brief, we conclude that respondent means this to be taxable income for the sole purpose of determining whether there has been a net operating loss or not and not for the purpose of determining tax liability. We note in passing that petitioner and respondent differ only in the order in which the deductions for percentage depletion and dividends received were taken.

be calculated simultaneously. This was to be accomplished by a series of simultaneous linear equations.

The Service published Rev. Rul. 79–347, 1979–2 C.B. 122, officially asserting the position announced in the TAM as the correct method of determining whether taxable income existed, and also the proper method to compute the amount of taxable income given the facts of this case.[7] In accordance with this method, respondent reduced petitioner's allowable deduction under section 243(a)(1) for dividends received by $77,066.[8]

---

[7]Rev. Rul. 79–347 begins with the expression of the interrelationship between the taxable income limitations on deductions for percentage depletion and dividends received in two linear equations:

$$x = 0.65(G-y), \text{ and}$$
$$y = 0.85(G-x)$$

or
$$x = 0.65G-0.65y$$
$$y = 0.85G-0.85x$$

G represents taxable income before deduction for either dividends received or percentage depletion, x represents the theoretical limitation on percentage depletion, and y represents the theoretical limitation on dividends received. Rev. Rul. 79–347 then solves these equations:

(1) Solving for x:

$$x = 0.65G-0.65(0.85G-0.85x)$$
$$= 0.65G-(0.65)(0.85)G+(0.65)(0.85)x$$
$$x-(0.65)(0.85)x = 0.65G-(0.65)(0.85)G$$
$$[1-(0.65)(0.85)]x = 0.65(1-0.85)G$$
$$x = \frac{0.65(1-0.85)}{1-(0.65)(0.85)}G$$
$$x = 0.21787709G$$
$$\text{Hence } x = 0.218G$$

(2) Solving for y:

$$y = 0.85G-0.85x$$
$$y = 0.85G-0.85(0.65G-0.65y)$$
$$= 0.85G-(0.85)(0.65)G+(0.85)(0.65)y$$
$$y-(0.85)(0.65)y = 0.85G-(0.85)(0.65)G$$
$$[1-(0.85)(0.65)]y = 0.85(1-0.65)G$$
$$y = \frac{0.85(1-0.65)}{1-(0.85)(0.65)}G$$
$$y = 0.66480446G$$
$$\text{Hence } y = 0.665G$$

[8]Determined as follows:

| | |
|---|---|
| Taxable income before deductions, etc. (line C) | $470,980 |
| Less: Depletion deduction (line E) | (58,049) |
| Taxable income before sec. 243(a)(1) deduction (line F) | 412,931 |
| Sec. 246(b)(1) dividends-received limitation (85% × line F) | 350,991 |
| Dividends-received deduction claimed on return[1] | 428,057 |
| Decrease of dividends-received deduction | 77,066 |

[1]See note 4 *supra.*

Determined in this way, the deduction for percentage deple-
tion is limited to an amount equal to taxable income before
any deduction for percentage depletion and dividends received
(line C in note 5, or $470,980) multiplied by 0.218, its
theoretical limitation (see note 7 *supra*), or $102,674. The
deduction for dividends received is similarly $470,980 multi-
plied by 0.665, its theoretical limitation (see note 7 *supra*), or
$313,202.[9]

Since the actual depletion allowance of $58,049 is less than
the theoretical limitation just calculated, only the lesser of the
two, $58,049, is deducted. This creates a new limitation for
dividends received of $350,991.[10] Taken in this order, respon-
dent determined that petitioner had taxable income of $61,940
in its 1975 year. Therefore, there was no net operating loss, no
corresponding carryback, and at least part of the investment
tax credit carried back to 1972 could now be utilized in the
1975 year, creating a deficiency in the 1972 return.

The factor to be stressed in this analysis is that, if there is a

---

[9]Respondent offers no authority supporting his rather novel proposition. Evidently, this
concept arose from a published article by two accountants. See Steinmann & Willis,
"Solving the Complexities Involved in the Computation of Percentage Depletion," 55 Taxes
674 (1977). Despite the title, we find it difficult to comprehend how suggesting to a taxpayer
that he must utilize simultaneous linear equations to determine his tax liability is in any
way *solving* a complexity.

[10]

| | |
|---|---|
| Taxable income before deductions, etc. (line C) | $470,980 |
| Theoretical limitation on percentage depletion | |
| (0.218 × above amount)(line D) | 102,674 |
| Theoretical limitation on dividends-received deduction | |
| (0.665 × above amount)(line H) | 313,202 |
| Actual percentage-depletion allowance | 58,049 |

Compute taxable income before dividends-received deduction:

| | |
|---|---|
| Line C | $470,980 |
| Less: Lesser of actual percentage depletion | |
| (58,049) or theoretical limitation (line D) | (58,049) |
| Equals line F | 412,931 |
| × sec. 246(b)(1) limit | ×0.85 |
| Computed limitation for dividends-received deduction | 350,991 |

Therefore, respondent determined petitioner's taxable income in the 1975 year as follows:

| | |
|---|---|
| Taxable income before deductions, etc. (line C) | $470,980 |
| Less: Deduction for depletion | (58,049) |
| Deduction for dividends received | (350,991) |
| Taxable income | 61,940 |

net operating loss for the 1975 year, then section 246(b)(2) allows a deduction for dividends received equal to the full section 243(a)(1) amount.

If we conclude petitioner experienced a net operating loss in its 1975 year, then (a) there is no deficiency in petitioner's Federal income tax for the 1975 year, and (b) the amount of such net operating loss for the 1975 year is $3,061.[11]

Therefore, the threshold question to be determined is whether petitioner experienced a net operating loss for its fiscal year ended June 30, 1975. If there was taxable income, we would then have to determine how the limitations of sections 246(b)(1) and 613A(d)(1), both of which are expressed as a percentage of taxable income, should be applied for the 1975 year. Because we hold for petitioner on the question of net operating loss, it is not necessary to decide the second issue.

Although written for this fact pattern, we agree with respondent that Rev. Rul. 79–347 does not apply to the primary question of whether or not petitioner had a net operating loss in the 1975 year. As a prerequisite to its calculations, the ruling assumes that there is taxable income in that year, as was concluded in the TAM.[12] The ruling itself states that the "first step is to determine if the taxpayer would have a net operating loss because the section 246(b)(1) limitation does not apply if the taxpayer has a net operating loss." 1979–2 C.B. at 123. If only one limitation applied, none of the ruling's calculations would be necessary. We do not agree, however, with how respondent determined whether a net operating loss existed in this case.

Section 172(c) defines a net operating loss as the excess of the deductions allowed by this chapter over gross income.

Section 172(d)(5) provides that for the purposes of determining the existence of a net operating loss, the full amount of dividends-received deduction is to be allowed without any limitation based on the taxable income of the taxpayer.[13]

---

[11]See note 5 *supra*.

[12]See note 6 *supra*.

[13]Subsecs. 172(c) and (d) state in relevant part:

(c) NET OPERATING LOSS DEFINED.—For purposes of this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income. Such

Petitioner contends that this means that *all* deductions allowed by chapter 1 of the Code, except the deductions listed in section 172(d), are allowed, and, then, the dividends-received deduction is subtracted to determine whether a net operating loss existed.[14] This is the procedure indicated in the example in section 1.172–2(b), Income Tax Regs.

However, petitioner's approach is incongruous with section 613A(d)(1), which computes taxable income for purposes of applying its limitation without regard to a net operating loss carryback, depletion deduction, or capital loss carryback. Respondent claims, therefore, that the taxable income for the section 613A(d)(1) limitation must include *all other* deductions, including the dividends-received deduction. Respondent then contends that petitioner errs by applying both limitations in his calculations to determine if there is a net operating loss, and that only the limitation on the depletion deduction should be applicable, citing section 246(b)(2). He further states that the taxpayer is reversing the order of the computations of net operating loss and taxable income, and that the correct order places the computation of net operating loss before the computation of taxable income[15] because "the computation of taxable income is dependent upon the results of the computation of net operating loss."

Once the dust settles, what we have here is a circle. The circle exists because there are (a) two deductions, each initially limited to a percentage of taxable income, *except* that (b) one of the deductions is not so limited in the case of the existence of a net operating loss. Respondent would have us break that circle by first "testing" for a net operating loss before determining the amount of taxable income. Respondent offers no authority supporting this treatment.

It seems clear from the above that the only practical manner in which the parties differ in determining whether a net

---

excess shall be computed with the modifications specified in subsection (d).

 (d) MODIFICATIONS.—The modifications referred to in this section are as follows:

 \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

 (5) COMPUTATION OF DEDUCTION FOR DIVIDENDS RECEIVED, ETC.—The deductions allowed by section 243 (relating to dividends received by corporations), \* \* \* shall be computed without regard to section 246(b) (relating to limitation on aggregate amount of deductions) \* \* \*

[14]See note 5 *supra*.
[15]See note 6 *supra*.

operating loss occured in the 1975 year is which deduction should be taken first (and, consequently, what amount of a depletion deduction should be allowed).[16] This is not addressed by section 172(c) or 172(d)(5).

The reasoning supporting our holding may be more apparent if we first follow the circle backward from respondent's determination that there was no net operating loss. The last amount subtracted from petitioner's income was the depletion allowance. This was limited by section 613A(d)(1) to 65 percent of the difference between taxable income before dividends-received or percentage-depletion deductions (line C) and the full section 243(a) deduction. The *full* section 243(a) amount was subtracted, under respondent's theory, because section 246(b)(2) allows the full amount when there is a net operating loss. Thus, respondent concludes that we should first "test" for a net operating loss. Respondent justifies this order of taking the deductions, and ignoring the section 243(a)(1) limit, by reference to section 172(d)(5). In this way, section 172(d)(5) directly affects the section 613A(d)(1) limitation. The net effect of this statutory interplay is that section 613A(d)(1) through section 172(d)(5) limit the dividends-received deduction.

The modifications of section 172(d)(5) originated in the 1954 Code. They were necessary to correspond to the change from a credit to a deduction of what is now section 243(a).[17] The adjustment to allow the dividends-received deduction without limitation to compute net operating loss was made to "lessen the differences in tax treatment of firms with fluctuating, and those with stable incomes." S. Rept. 1622, 83d Cong., 2d Sess. 33 (1954). Section 172 in general provides this desired result by allowing current deductions which are unusable in the taxable year because of a lack of taxable income against which they can be offset, to instead be carried to another year in the form of a loss. This alleviates some of the inequities of the yearly accounting period. Section 172 was not meant to be used to *determine* the amount of a current deduction under an unrelated section of the Code. Under respondent's approach,

---

[16]Compare respondent's calculations in note 6 *supra*, with those of petitioner in note 5 *supra*.

[17]Sec. 26(a), I.R.C. 1939.

however, by taking the dividends-received deduction first, ostensibly to comply with section 172(d)(5), we would be reducing the percentage-depletion deduction.

A further result here is that being eligible for one deduction directly reduces the available amount of another deduction. We find no indication in the legislative history of section 172(d)(5) or 246(b) that the dividends-received deduction was ever meant to reduce the amount of other deductions in the Code. In fact, the opposite was intended:

> Additional language in the revised section, subsections (d)(3) and (5), has been added to *retain the same result as present law* in view of the change of * * * certain corporate credits to deductions. [H. Rept. 1337, 83d Cong., 2d Sess. A57. Emphasis added.]

It may be argued, though, that section 613A addressed the problem, and respondent's method exemplifies congressional intent, because section 613A(d)(1) provides a permanent carry-over of all unused percentage depletion to later years. Therefore, what is unused in the present year as a result of the dividends-received deduction is not necessarily lost to the taxpayer. This is true in part, but does not answer all of the problems raised. What is crucial is that, under respondent's method, the petitioner is in the ironic position of permanently losing dividends-received deductions by acquiring percentage-depletion deductions.[18] When Congress enacted section

---

[18]If the taxpayer has both deductions, under respondent's method, it can never have a net operating loss unless the dividends-received deduction is greater than $470,980. This is because, by subtracting the dividends-received deduction first, a positive number will always result. Therefore, the sec. 613A(d)(1) limit will apply. Assume that petitioner received $1 in depletion allowance, and that other unrelated deductions are adjusted so that line C remains unchanged. Respondent would first find that there is taxable income as follows:

| | |
|---|---:|
| Taxable income before deductions, etc. (line C) | $470,980 |
| Less: Full dividends-received deduction | (415,992) |
| Less: Depletion allowance | |
| (Lesser of actual or sec. 613A(d)(1) limit) | (1) |
| | 54,987 |

Respondent would then determine petitioner's taxable income as follows:

| | |
|---|---:|
| Line C | $470,980 |
| Less: Depletion allowance | (1) |
| | 470,979 |

| | |
|---|---:|
| Compute sec. 246(b)(1) limit | $470,979 |
| | ×0.85 |
| | 400,332 |

246(b)(2), it was aware that the then-credit limitation made the credit of no use to a company which had a total loss for its fiscal year. As the Senate Finance Committee report stated:

The corporate dividend-received credit is also of no avail to the corporation utilizing the loss carryover, since the credit is limited to 85 percent of net income, and is thus wiped out in a loss year. * * *

\* \* \* \* \* \* \*

Your committee * * * permit[s] inclu[ding] in the loss to be carried over * * * 85 percent of dividends received from domestic corporations. * * * Second, for purposes of the net operating loss, the taxpayer is permitted the deduction for dividends received computed without the limitation of the latter relative to total net income. Thus the taxpayer who utilizes the net operating loss deduction will *have the full benefit* not only of tax exempt interest, * * * but also of all percentage depletion and of dividend received deductions. [S. Rept. 1622, *supra* at 32–33. Emphasis supplied.]

While we are aware that there is a "notch" in section 246(b) whereby a taxpayer may substantially increase a net operating loss through a small increase in the dividends-received deduction, this is through the mechanism of section 246(b), itself. J. Mertens, Law of Federal Income Taxation, Commentary sec. 172(d):4 (1982). Under the method respondent utilizes, section 613A(d)(1), not just section 246(b)(1), is limiting the

---

Less: Lesser of dividends received
($415,992) or computed sec. 246(b)(1)
    limit ($400,332) ....................................($400,332)
Taxable income ......................................... 70,647

For this purpose, though, we focus not on taxable income, but on the dividends-received deduction. Of the sec. 243(a)(1) amount, $15,660 (i.e., $415,992 – $400,332) is forever lost. This is not unusual, because even without the percentage-depletion deduction, sec. 246(b)(1) would have the same limit, and, correspondingly, petitioner would lose that amount.

But if we increase the percentage-depletion deduction to $102,674 (and assume other deductions adjust to keep line C constant), then according to respondent the amount of sec. 243(a)(1) deduction allowed drops to $313,060:

Line C ................................................... $470,980
    Less: Depletion allowance limitation ................... (102,674)
                                            368,306
Compute sec. 246(b)(1) limitation ........................ ×0.85
Allowable dividends-received deduction ................. 313,060

Indeed, between these parameters, for every $10,000 of depletion allowance increase up to the theoretical limit, $8,500 is lost from the dividends-received deduction. Under respondent's method, the numbers do not change (keeping line C assumptions) *no matter how much* percentage-depletion deduction petitioner has, or until the sec. 243(a)(1) deduction exceeds $470,980. The net result is that by obtaining $102,673 more in percentage-depletion deductions, petitioner would marginally lose forever $87,272 in dividends-received deductions.

amount of the dividends-received deduction. From the record above, this was not Congress' intent, as Congress assumed the dividends-received deduction would be reflected in a net operating loss, which then could be carried from year to year. Similarly, unused percentage depletion is carried forward to subsequent years without limit. But the dividends-received deductions lost through the existence of the percentage depletion deduction are *gone forever*, as there is no net operating loss in which they could be preserved. Indeed, the very purpose of section 246(b)(2) is not to allow such a result to occur. It follows that section 613A(d)(1), under respondent's method, is defeating the function of section 246(b)(2). We do not agree with such an application. It is a fundamental rule of construction that:

> The legislative intent is to be drawn from the whole statute, so that a consistent interpretation may be reached *and no part shall perish or be allowed to defeat another.* * * * [1 J. Mertens, Law of Federal Income Taxation sec. 3.13, at 22 (1981 rev.). Emphasis supplied; fn. ref. omitted.]

But merely holding that respondent's method is incorrect does not provide us with the correct method to establish petitioner's taxable income.[19]

To determine whether petitioner had a net operating loss in the 1975 year, we must look to Congress' intent in enacting sections 246(b)(2), 172(d)(5), and 613A(d)(1). We may also draw inferences of the proper method to be utilized from analogous statutes.

The provision that seems to be responsible for the confusion at hand is section 613A, as it was the one most recently enacted. In the Tax Reduction Act of 1975, Pub. L. 94–12, 89 Stat. 26, the percentage-depletion allowance for oil and gas was repealed, with two exceptions. One of these two is the small producer exception for which petitioner qualifies. This exception was to have a continually reduced percentage over a series of years. The original House version eliminated percentage depletion altogether. It is clear from this legislative record

---

[19]Owing to the particular numbers in this case, our holding determines that petitioner experienced a net operating loss in the 1975 year. Therefore, we need not address the validity of respondent's ruling, or whether Congress ever had in mind the utilization of simultaneous linear equations for computing tax liability in those instances where it is established that taxpayers would have had taxable income.

that Congress wanted to allow percentage depletion only in limited and specified cases. Later, in 1976, the Senate Finance Committee in its report accompanying H.R. 10612 wished to clear up ambiguities in the statute.[20] The main goal in amending the statute 1 year after its enactment was to avoid confusion in the proper calculation of the limitation. Congress wished to avoid the exact kind of "circle" that has been created in the instant case. Despite its desire for statutory clarity, Congress fell short of its goal, and presumably was not cognizant of the conflict with the section 246(b)(1) dividends-received limitation.

We therefore disagree with respondent's argument that the failure of Congress to provide an ordering statute is to be interpreted as a "mandate" in any way. We agree with respondent that the general rule is that courts may not supply supposed omissions in a revenue act or enlarge a statute's scope. *Bates v. United States*, 581 F.2d 575, 579 (6th Cir. 1978); *Busey v. Deshler Hotel Co.*, 130 F.2d 187, 190 (6th Cir. 1942); *Helvering v. Rebsamen Motors, Inc.*, 128 F.2d 584, 587–588 (8th Cir. 1942). Generally, we are limited to what Congress has written, not what Congress might have written. *Youakim v. Commissioner*, 562 F.2d 483, 487 (7th Cir. 1977); affd. sub nom. *Miller v. Youakim*, 440 U.S. 125 (1979); *Farmer's Tractor & Equipment Co. v. United States*, 224 F. Supp. 391, 394 (E.D. Ark. 1963). Cf. *United States v. Calamaro*, 354 U.S. 351, 357 (1957).

But there is a fundamental difference between rewriting statutes and construing them. It is the Court's duty to construe statutes as written. *White v. United States*, 305 U.S. 281, 292 (1938); *David Metzger Trust v. Commissioner*, 76 T.C. 42, 60 (1981). By accepting petitioner's interpretation, we are by no means usurping the role of the legislature by rewriting its statutes. On the contrary, respondent admits there is a "gap" in the statutory framework. We simply intend to plug that gap

---

[20]The Committee stated:

"In addition, the language of present law is changed to make clear that in computing taxable income for purposes of the 65-percent-of-taxable-income limitation, percentage depletion under the small producer exemption is not treated as a deduction from taxable income. (*Otherwise, there would be a circle, with percentage depletion reducing the base of taxable income against which the 65-percent limitation is measured.*) * * * [S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 464. Emphasis supplied.]"

as we believe Congress would have wished. To not do so would make it impossible for petitioner to determine its taxable income and liability. The omission by Congress cannot be both a gap at one moment and a mandate the next. The legislative history, together with the fact that if Congress had wished a particular method be adopted for the calculations it could easily have provided so, makes it apparent to us that Congress simply had not considered the issue.

However, Congress has addressed an almost identical problem in another statute. For a corporation, charitable deductions are limited to a percentage of taxable income. Sec. 170(b)(2).[21] In addition, section 170(b)(2)(B) provides that where a corporation is entitled to deductions for both charitable contributions and dividends received, taxable income (for purposes of computing the percentage limitation for charitable deductions), is computed without regard to the dividends-received deduction. In other words, the charitable deduction is taken first.[22] Congress, it can be assumed, thought this to be the proper solution to our present conflict, as it comports with the overall structure of the Code.

We conclude that congressional intent is reflected in section

---

[21]There is likewise no ordering provision between the sec. 613A(d)(1) and the sec. 170(b)(2) limitations.

[22]If we assume as a hypothetical that petitioner also made a charitable contribution during the 1975 year, under respondent's method, it would be impossible to determine petitioner's tax liability in accordance with the Code. This is because if the limitations for percentage depletion and charitable contributions were calculated simultaneously, taxable income would take both deductions into account. If the limitations for percentage depletion and dividends received were also calculated simultaneously (as respondent ultimately concludes they should be in this case), taxable income would take both of those deductions into account. Taken together in this manner, all deductions would affect the computation of taxable income. But this is contrary to the express language of sec. 170(b)(2)(B) which says taxable income for the charitable-deduction limitation is computed without regard to the dividends-received deduction. If we instead say it is not necessary to compute the percentage-depletion and charitable-contribution limitations simultaneously, this belies respondent's rationale of a silent congressional mandate.

If we now assume that we are testing only for a net operating loss, respondent's method still fails. If we rank the deductions, then (assuming that the entire dividends-received deduction is taken) either the sec. 613A(d)(1) or the sec. 170(b)(2)(B) definition of taxable income would be violated (as the one taken later could not be included in the computation of the former). If instead we compute those limitations simultaneously, then we must either take the dividends-received deduction first (that is, before the charitable and the percentage-depletion deductions), last, or at the same time. If we take it first or at the same time, then this violates the express language of sec. 170(b)(2)(B). If we take it last, this represents petitioner's argument.

170(b)(2)(B), and that the proper method is to rank the deductions, with the dividends-received deduction being taken last. This is supported by section 1.172–2(b), Income Tax Regs., where all deductions in that example were taken before the dividends-received deduction. Thus, the section 613A(d)(1) limit should be applied against taxable income computed without regard to the section 243(a)(1) deduction.

Finally, it is urged that our holding violates the literal language of the Code, specifically section 613A(d)(1). We believe a careful reading of that section shows this is not the case.[23] However, were it so, this would not change our decision. All laws are to be given a sensible construction. If a reasonable application can be given which is consistent with legislative intent, literal applications leading to absurd consequences are to be ignored. *United States v. Ryan*, 284 U.S. 167, 175 (1931); *Easson v. Commissioner*, 33 T.C. 963 (1960), revd. 294 F.2d 653 (9th Cir. 1961), overruled *Doyon, Ltd. v. Bristol Bay Native Corp.*, 569 F.2d 491 (9th Cir. 1978). "It is not our understanding that a taxing statute is only to be read literally when a literal reading favors the government." *Busse v. Commissioner*, 479 F.2d 1147, 1153 (7th Cir. 1973), quoting *Helvering v. Rebsamen Motors, Inc.*, 128 F.2d 584, 587–588 (8th Cir. 1942). When a rigid adherence to the general rule would require disregard of clear intentions to the contrary, the rule must yield. *United States v. Zacks*, 375 U.S. 59, 69 (1963). See 1 J. Mertens, Law of Federal Income Taxation sec. 3.04, at 8. The Supreme Court recently discarded the "plain meaning" rule when that rule is used to exclude consideration of additional information when construing a statute. In *Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 10 (1976), the Court stated (quoting *United States v. American Trucking Assns.*, 310 U.S. 534, 543–544 (1940)):

When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." * * *

We have illustrated the absurd consequences of respondent's

---

[23]See the discussion in the text accompanying notes 3 & 4 *supra* of how the sec. 613A(d)(1) definition of taxable income cannot be determined.

method, which we think could not have reflected congressional intent.

Accordingly, we hold that petitioner had a net operating loss of $3,061 in its fiscal year ended June 30, 1975. Hence, there is no deficiency in its income tax for that year. Because of concessions made by the petitioner, there will be a deficiency of $668.70 for the fiscal year ended June 30, 1972. To give effect thereto and to the conclusions reached herein,

*Decision will be entered under Rule 155.*