ZETA BETA TAU FRATERNITY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9419-78.        Filed August 13, 1986.

*Harold R. Bucholtz*, for the petitioner.
*Lawrence D. Garr*, and *George J. Blaine* for the respondent.

SWIFT, *Judge*: In a timely statutory notice of deficiency respondent determined a deficiency in the unrelated business income tax of petitioner for its taxable year ending June 30, 1971, in the amount of $1,936. The only issue for decision is whether petitioner, a tax-exempt social club described in section 501(c)(7),[1] also qualifies as a tax-exempt domestic fraternal society described in section 501(c)(10). If so, petitioner's income from investments is not taxable as unrelated business income and petitioner is not liable for an underpayment of tax.

### FINDINGS OF FACT

This case was submitted fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure. At the time of filing the petition herein, petitioner maintained its principal office in New York City.

Petitioner was organized as a New York corporation in 1907. Petitioner is the central organization of the Zeta Beta Tau national college fraternity (hereinafter referred to as Zeta Beta). Associated with Zeta Beta are approximately 80 local chapters. Also associated with Zeta Beta are approximately 80 corporations (hereinafter referred to as the house corporations) that individually own each building in which the local fraternity houses are located. Zeta Beta also operates the Zeta Beta Tau Foundation, Inc., and the NPEF Foundation, Inc. Zeta Beta, its associated local chapters, and the house corporations were granted tax-exempt status by respondent in 1940 under the provisions of section 101(a), Internal Revenue Code of 1939, the predecessor to section 501(c)(7).

Under the provisions of its national constitution and code of rules, the officers and directors of Zeta Beta's governing body, the supreme council,[2] are selected by representatives of the local chapters who meet annually at a national convention. The supreme council meets periodically and acts as the legislative, executive, and judicial authority of Zeta Beta. Zeta Beta also employs an administrative staff. The

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

[2] The supreme council consists of Zeta Beta's president, two vice presidents, a treasurer, secretary, 10 alumni directors, and 5 undergraduate directors.

principal purpose of Zeta Beta's central staff is to serve as the coordinating and governing organization of the local chapters, house corporations, and private foundations that comprise the Zeta Beta national college fraternity.

Zeta Beta also provides various programs, services, and publications to the local chapters, their members, and the house corporations. The services and publications provided by Zeta Beta include a philantrophic and social service programming guide, a dance marathon guide, a fraternity magazine, awards to local chapters and members for scholastic and public service achievements, information concerning scholarship and emergency student loan programs, a leadership school for undergraduate members, and a monthly newsletter containing articles on professional schools, study tips, financial aid information, and social news from local chapters throughout the United States. Zeta Beta itself does not engage in any significant social activities.

Each local chapter of Zeta Beta adopts its own constitution and bylaws and generally exercises substantial autonomy in the governance of its affairs. The local chapter may not, however, adopt any rule that contravenes Zeta Beta's constitution or code of rules. Generally, each local chapter does not incorporate as a separate entity. Each chapter, however, files its own annual Federal tax returns (Forms 990, Return of Organization Exempt from Tax). The assets, liabilities, receipts, and expenses of local chapters are not included on Zeta Beta's Federal tax returns. Zeta Beta also does not file a separate group information return with respondent on behalf of local chapters.

Each house corporation associated with Zeta Beta is separately incorporated and serves as the owner and manager of the local fraternity house. The house corporations individually file annual Federal tax returns (Forms 990), and Zeta Beta does not include the assets, liabilities, receipts, or expenses of the individual house corporations in its Federal tax returns. Each house corporation is, however, subordinate to Zeta Beta and subject to its general supervision.

The Zeta Beta Tau Foundation, Inc. (hereinafter referred to as the ZBT Foundation) provides scholarship and loan assistance to undergraduate students who belong to the

fraternity. The ZBT Foundation also issues fellowship grants to graduate students in return for their management advice to local chapters of Zeta Beta. The NPEF Foundation, Inc., supports Zeta Beta research and publication programs, chapter house libraries, and leadership development workshops. Both the ZBT Foundation and the NPEF Foundation are recognized by respondent as exempt from Federal income taxes under section 501(c)(3).

As of 1985, Zeta Beta had approximately 104,500 members, of which 4,500 were undergraduate college students and 100,000 were alumni members. Zeta Beta's local chapters provide the undergraduate student members of Zeta Beta housing and meals, social activities, and opportunities for charitable service within their communities. Usually, only a portion of the members of a local chapter reside at the fraternity house. Local chapters generally provide daily meals to their members.

Social activities of each chapter typically include homecoming weekend for alumni and parents, a fall "football weekend," a winter carnival, and a formal dance in the spring. Depending on budgetary considerations and the calendar of social events sponsored by the college, local chapters sponsor additional social events at the fraternity house. The costs of the social events typically are borne by individual members of the chapter.

Local chapters of Zeta Beta also participate in public service activities, such as blood drives, Easter Seal drives, and the transportation of elderly citizens to the polls on election day. Some local chapters regularly sponsor an annual dance marathon to raise funds for charity.

Local chapters of Zeta Beta compete with other college fraternities in scholastic achievement. Chapter members help each other adjust to college life and generally aid in each other's personal development. At times, upperclassmen and graduate student members of Zeta Beta assist and supervise other members of Zeta Beta in their studies. Most Zeta Beta fraternity houses contain a library for use by members. Of the approximately 100,000 alumni, approximately 5,100 contributed money in 1984 to Zeta Beta. An additional 600 alumni participated in Zeta Beta activities in 1984.

The parties agree that Zeta Beta and its subordinate local chapters operate under the lodge system and do not pay insurance benefits to members within the meaning of section 501(c)(10). Zeta Beta concedes that (together with its subordinate local chapters and house corporations) it is a national college fraternity within the meaning of section 1.501(c)(10)-1, Income Tax Regs.

On August 18, 1972, Zeta Beta filed a Return of Organization Exempt from Tax (Form 990) for its taxable year ended June 30, 1971. On June 15, 1973, Zeta Beta filed its Exempt Organization Business Income Tax Return (Form 990-T) for its taxable year ended June 30, 1971. In November of 1975, Zeta Beta filed with respondent an application for a determination that it was tax exempt as a domestic fraternal society under section 501(c)(10). Zeta Beta's application was denied on June 26, 1976. In his letter denying the application, respondent noted that Zeta Beta had "always operated * * * exclusively for educational, charitable, or fraternal purposes," but that as a national college fraternity, it was precluded from tax exemption under section 501(c)(10) by section 1.501(c)(10)-1, Income Tax Regs.

On July 8, 1976, Zeta Beta protested respondent's denial of its application for tax-exempt classification as a domestic fraternal society under section 501(c)(10), and requested reconsideration thereof. On September 30, 1977, respondent reaffirmed his denial of Zeta Beta's application. Respondent's notice of deficiency at issue herein followed.

Respondent's computation of the deficiency herein is based on his inclusion in Zeta Beta's unrelated business income the investment income Zeta Beta received in its taxable year ending June 30, 1971.

## OPINION

Generally, tax-exempt organizations described in section 501(c) are taxed at regular corporate rates on unrelated business income. Sec. 511(a).[3] The term "unrelated business taxable income" is defined as the gross income derived from any unrelated trade or business regularly carried on by an

---

[3] An exception is made for Government instrumentalities described in sec. 501(c)(1) which are not subject to the tax on unrelated business income provided in sec. 511(a).

organization, less allowable deductions that are directly connected with the conduct of the trade or business. Sec. 512(a). In general, investment income such as dividends, interest, annuities, royalties, rents derived from real property, and capital gains, are excluded from the exempt organization's unrelated business income. Sec. 512(b)(1).

Unrelated business income is described differently, however, for, among other organizations, tax-exempt social clubs described in section 501(c)(7). In the case of a section 501(c)(7) social club, unrelated business taxable income includes all income generated by the organization other than "exempt function income" less expenses related to exempt function income. Sec. 512(a)(3)(A).[4] Exempt function income is defined as the gross income derived from dues, fees, charges, or similar amounts received from organization members or their guests for goods, facilities, or services in furtherance of the tax-exempt purposes of the organization. Sec. 512(a)(3)(B).[5] The result of this difference in the computation of unrelated business taxable income is that investment income of section 501(c)(7) social clubs is taxed as unrelated business income, whereas investment income of section 501(c)(10) fraternal organizations generally is not

---

[4] Also subject to the special rule provided in sec. 512(a)(3)(A), as currently in effect, are voluntary employees' beneficiary associations under sec. 501(c)(9), supplemental unemployment compensation trusts under sec. 501(c)(17), and group legal services plans under sec. 501(c)(20). Sec. 512(a)(3)(A) provides:

(3) SPECIAL RULES APPLICABLE TO ORGANIZATIONS DESCRIBED IN SECTION 501(c)(7) OR (9).—

(A) GENERAL RULE.—In the case of an organization described in section 501(c)(7) or (9), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11), and (12) of subsection (b). * * *

[5] Sec. 512(a)(3)(B) provides:

(B) EXEMPT FUNCTION INCOME.—For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if the organization were subject to paragraph (1)), which is set aside—

(i) for a purpose specified in section 170(c)(4), or

(ii) in the case of an organization described in section 501(c)(9), to provide for the payment of life, sick, accident, or other benefits,

including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii). If during the taxable year, an amount which is attributable to income so set aside is used for a purpose other than that described in clause (i) or (ii), such amount shall be included, under subparagraph (A), in unrelated business taxable income for the taxable year.

taxed as unrelated business income. See *South End Italian Independent Club, Inc. v. Commissioner*, 87 T.C. 168 (1986); see generally B. Hopkins, The Law of Tax Exempt Organizations, sec. 18.4, at 309-310 (1983).

Zeta Beta, as the central organization of a national college fraternity, received its long-standing tax exemption under the predecessor of section 501(c)(7). Zeta Beta argues, however, that it also properly may be classified as a domestic fraternal society under section 501(c)(10), and that its investment income, therefore, should not be subject to the unrelated business income tax.

Section 501(c)(10), a new category of tax-exempt organizations that was added to the Internal Revenue Code by the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487 (hereinafter sometimes referred to as the 1969 Act), provides a tax exemption for—

(10) Domestic fraternal societies, orders, or associations, operating under the lodge system[6]—
    (A) the net earning of which are devoted exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes, and
    (B) which do not provide for the payment of life, sick, accident, or other benefits.

Treasury regulations relating to section 501(c)(10) expressly state that national college fraternities do not qualify under section 501(c)(10). Section 1.501(c)(10)-1, Income Tax Regs., provides as follows:

Certain fraternal beneficiary societies.
    (a) For taxable years beginning after December 31, 1969, an organization will qualify for exemption under section 501(c)(10) if it—
    (1) Is a domestic fraternal beneficiary society order, or association, described in section 501(c)(8) and the regulations thereunder except that it does not provide for the payment of life, sick, accident, or other benefits to its members, and
    (2) Devotes its net earnings exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes.
*Any organization described in section 501(c)(7), such as, for example, a national college fraternity, is not described in section 501(c)(10) and this section.* [Emphasis added.][7]

---

[6] The term "operating under the lodge system" means carrying on its activities under a form of organization that comprises local branches, chartered by a parent organization and largely self-governing, called lodges, chapters, or the like. Sec. 1.501(c)(8)-1, Income Tax Regs.

[7] Sec. 1.501(c)(10)-1, Income Tax Regs., was promulgated on Mar. 1971, and given retroactive effect. T.D. 7172, 1972-1 C.B. 141.

Zeta Beta argues that it is an organization that is precisely described by the language of section 501(c)(10) because it is a fraternal society that operates under the lodge system, it does not provide insurance benefits to members, and because its net earnings are devoted exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes. Zeta Beta further argues that it cannot be distinguished factually from organizations such as the Masons, Moose, or Elks clubs which usually are classified by respondent as tax exempt under section 501(c)(10). Zeta Beta, therefore, contends that section 1.501(c)(10)-1, Income Tax Regs., in its exclusion of national college fraternities from tax exemption under section 501(c)(10), establishes an arbitrary distinction that discriminates between two similarly situated taxpayers (namely, national college fraternities and organizations such as the Masons) and is, therefore, to that extent invalid.

Zeta Beta also contends that its classification as a tax-exempt organization described in section 501(c)(7) does not preclude its additional classification under section 501(c)(10). Zeta Beta concludes that if it meets the precise description of a section 501(c)(10) organization, there is no express or implied legislative policy that would deny it an exemption thereunder just because it also may be classified as a section 501(c)(7) social club.

Respondent argues that Zeta Beta is not an organization described in section 501(c)(10) because of the clear congressional intent that national college fraternities be exempt from tax as social clubs under section 501(c)(7). Respondent contends that national college fraternities such as Zeta Beta are fundamentally different from those fraternal organizations, such as the Masons, that Congress intended to qualify for tax exemption under section 501(c)(10). Finally, respondent argues that even if a national college fraternity could qualify for tax exemption under section 501(c)(10), the net earnings of Zeta Beta herein are not exclusively devoted to the exempt purposes listed in section 501(c)(10)(A). For the above reasons, respondent argues that Zeta Beta properly may be classified only as a section 501(c)(7) tax-exempt social club.

After careful review of the relevant statutory provisions, the legislative history thereof, and the facts of this case, we agree with respondent that a national college fraternity such as Zeta Beta may not properly be classified as a domestic fraternal society described in section 501(c)(10).

Contrary to Zeta Beta's contention, the relevant statutory language is not clear and unambiguous. As we recently stated—

Trying to understand the various exempt organization provisions of the Internal Revenue Code is as difficult as capturing a drop of mercury under your thumb. There are currently 23 categories of exempt organizations under section 501(c) and five categories of organizations recognized as qualified donees of tax deductible contributions under section 170(c). Rarely is it clear that an organization would qualify only under one of the categories of section 501(c), and often it is clear that an organization would qualify under a number of the categories, even though a particular organization may have applied for and actually received its exemption letter under a single provision of section 501(c). * * * [*Weingarden v. Commissioner*, 86 T.C. 669, 675 (1986).]

There is an extensive body of legislative history explaining the changes in 1969 to the unrelated business income tax provisions of the Code and of the addition of paragraph 10 to section 501(c). A decision herein based solely on the statutory language would be based on a mere "toss of the coin." Reference to the relevant legislative history, on the other hand, provides significant insight into the relevant statutory language. Under such circumstances, we would be remiss if we were to ignore such assistance. See *United States v. American Trucking, Associations, Inc.*, 310 U.S. 534, 543-544 (1940); *J.C. Penney Co. v. Commissioner*, 312 F.2d 65, 68 (2d Cir. 1962), affg. 37 T.C. 1013 (1962); *Lastarmco v. Commissioner*, 79 T.C. 810, 826 (1982).

As explained, the tax exemption for domestic fraternal organizations in section 501(c)(10) had its genesis in the Tax Reform Act of 1969 and arose specifically out of the imposition of the unrelated business income tax on investment income of membership organizations described in section 501(c)(7) and (c)(9). Congress recognized that a tax-exempt social club or similar group organized for recreational or social purposes merely was an extension of the individual members and that it would be inappropriate to impose a tax on the social club as a separate entity. S.

Rept. 91-552 (1969), 1969-3 C.B. 423, 429. One court summarized the rationale as follows:

Congress has determined that in a situation where individuals have banded together to provide recreational facilities on a mutual basis, it would be conceptually erroneous to impose a tax on the organization as a separate entity. The funds exempted are received only from the members and any "profit" which results from overcharging for the use of the facilities still belongs to the same members. No income of the sort usually taxed has been generated; the money has simply been shifted from one pocket to another, both within the same pair of pants. * * * [McGlotten v. Connally, 338 F. Supp. 448, 458 (D. D.C. 1972).]

Where, however, the tax-exempt membership organization receives investment income and uses the tax-free income to pay for recreational services offered to its members, the members receive an unintended benefit. As explained in the Senate committee report—

where the organization receives income from sources outside the membership, such as income from investments (or in the case of employee benefit associations, from the employer), upon which no tax is paid, the membership receives a benefit not contemplated by the exemption in that untaxed dollars can be used by the organization to provide pleasure or recreation (or other benefits) to its membership. For example, if a social club were to receive $10,000 of untaxed income from investment in securities, it could use that $10,000 to reduce the cost or increase the services it provides to its members. In such a case, the exemption is no longer simply allowing individuals to join together for recreation or pleasure without tax consequences. Rather, it is bestowing a substantial additional advantage to the members of the club by allowing tax-free dollars to be used for their personal recreational or pleasure purposes. The extension of the exemption to such investment income is, therefore, a distortion of its purpose. [S. Rept. 91-552, supra, 1969 C.B. at 470.]

The House report accompanying the Tax Reform Act of 1969 notes similar concern with respect to fraternal societies, as follows:

The receipt of untaxed income by fraternal beneficiary societies for use in providing recreational or social facilities in furtherance of the organization's fraternal purpose creates a similar problem to that of social clubs. * * * [H. Rept. 91-413 (1969), 1969-3 C.B. 199, 231.]

Congress recognized, however, that investment income also could be used by tax-exempt membership organizations to further the exempt purposes of the organizations and that in such cases the tax on investment income would be

inappropriate. Accordingly, the statutory exception found in section 512(a)(3)(B)(i) and (ii) for such income was enacted. As originally proposed by the House, only investment income of fraternal beneficiary associations and employees' beneficiary associations would have been eligible to qualify for this exception. In the Senate Finance Committee, however, the House version was changed to include investment income of social clubs where the investment income of social clubs was set aside for educational or charitable purposes. The Senate committee report explains the change as follows:

> In extending the exemption, the committee intends in the case of *national organizations of college fraternities and sororities* that amounts set aside for scholarships, student loans, loans on local chapter housing, leadership and citizenship schools and services, and similar activities, be classified as amounts used for educational or charitable purposes under this provision. * * * [S. Rept. 91-552, *supra*, 1969 C.B. at 470. Emphasis added.]

The express reference in the above legislative history to investment income of "national organizations of college fraternities and sororities," makes it very clear that Congress considered the investment income of such organizations to be generally subject to the new unrelated business income tax provisions.

In the general explanation of the 1969 Act issued in 1970 by the Joint Committee on Taxation it was expressly noted that the tax on investment income would apply to national organizations of college fraternities and sororities, unless the investment income thereof is set aside for certain educational or charitable purposes. Staff of Joint Comm. on Taxation, 91st Cong., lst Sess., General Explanation of the Tax Reform Act of 1969, at 70 (J. Comm. Print 1970).

In 1976, Congress reiterated its intention that national college fraternities be tax exempt under the provisions for social clubs described in section 501(c)(7). Certain amendments were made in 1976 to section 501(c)(7), not germane to the issue herein, concerning the scope of a social club's exempt activities and the discriminatory practices of some social clubs. Act of September 28, 1976, Pub. L. 94-568, 90 Stat. 2697. In the committee report explaining those amendments, national college fraternities were expressly

identified as the types of organizations described in section 501(c)(7), as follows—

The House-passed bill, H.R. 1144, amends the requirements for tax exemption for *social clubs and similar organizations (including college fraternities and sororities)* in two respects. * * * [S. Rept. 94-1318 (1976), 1976-2 C.B. 597. Emphasis added.]

That same committee report refers to national college fraternities and sororities several additional times in connection with their tax-exempt classification under section 501(c)(7). For example:

In addition, the 1969 Act extended the unrelated business income tax, in the case of these social clubs *and national organizations of college fraternities and sororities*, to cover investment income as well as unrelated business income. * * * [S. Rept. 94-1318, *supra*, 1976-2 C.B.at 598. Emphasis added.]

and—

It is intended that a social club, *national organization of a college fraternity or sorority*, and any other organization exempt under section 501(c)(7), may receive the full 35-percent amount of its gross receipts from investment income sources * * * . [S. Rept. 94-1318, *supra*, 1976-2 C.B. at 599. Emphasis added.]

Petitioner's reliance on *Smith v. Commissioner*, 28 B.T.A. 422 (1933), *Elmira Bank & Trust Co. v. McGowan*, an unreported opinion (W.D. N.Y. 1955, 54-2 USTC par. 10,959), affd. sub nom. *Marine Midland Trust Co. v. McGowan*, 223 F.2d 408 (2d Cir. 1955), and *Langfitt v. United States*, 321 F. Supp. 360 (W.D. Pa. 1970), is misplaced. In *Smith v. Commissioner*, *supra*, the taxpayer donated to a college fraternity a gift of money which was held to be deductible under the predecessors of sections 170(c)(4) (which provides a deduction for gifts to domestic fraternal societies) or 170(c)(2) (which provides a deduction for gifts to other types of tax-exempt organizations, including social clubs). The opinion in *Smith* does not make clear whether the fraternity involved in that case was held to qualify as a charitable donee under section 170(c)(4), section 170(c)(2), or both, and thus it is not helpful herein.

The District Court in *Elmira Bank & Trust Co. v. McGowan*, *supra*, held that a donation to a college fraternity's academic scholarship fund was a deductible

charitable contribution under section 2055(a)(3) and described the fraternity as a "fraternal society." The Second Circuit, in affirming the District Court, however, did not describe the fraternity specifically as a "fraternal" organization under section 2055(a)(3), as opposed to one of the other categories of qualified donee organizations under that section.

In *Langfitt v. United States, supra*, the District Court treated a college fraternity as a tax-exempt social or recreational organization and a related educational trust fund as an exempt educational organization. Neither the fraternity nor the trust fund was treated as a fraternal organization under section 2055(a)(3).

The above cases involved taxable years prior to 1969, the year in which the substantial amendments were enacted to the statutory provisions at issue herein, and they are not particularly helpful in deciding whether a national college fraternity can qualify for its tax exemption under section 501(c)(10). Similarly, obsolete Treasury regulations cited by Zeta Beta[8] which refer to national college fraternities as being within the general category of "fraternal beneficiary societies," are not controlling because they pre-date the substantial 1969 amendments to sections 501(c) and 512.

Zeta Beta's emphasis on its similarity to section 501(c)(10) organizations such as the Masons also is not persuasive. Clearly, like the Masons, Zeta Beta operates under the lodge system and its local chapters engage in some activities that concedely further the charitable and educational goals of the fraternity. We agree with respondent, however, that the predominant purpose of Zeta Beta and its local chapters is to provide housing, board, and social activities for its undergraduate student members. In that respect,

---

[8] Zeta Beta relies on obsolete Treasury Regulation sec. 49.4243-1, Facilities and Services Excise Tax Regs., which provides:

In the case of a fraternal society, order, or association, operating under the lodge system, or a local fraternal organization among the students of a college or university, all amounts paid as dues or membership fees, as initiation fees, or for life memberships are exempt from the tax imposed under section 4241. The phrase "operating under the lodge system" means carrying on activities under a form of organization that comprises local branches, chartered by a parent organization and largely self governing, called "lodges," "chapters," or the like. For example, an organization formed for purely social purposes by Masons of the higher degrees, consisting of local "lodges" and a "grand lodge," falls within the exemption. A "chapter" of a college fraternity and a "local" of a labor union are also within the exemption. * * * [26 Fed. Reg. 561 (Jan. 20, 1961).]

Zeta Beta is fundamentally different from fraternal organizations such as the Masons.

Even if we could find no relevant distinction between the purposes and activities of Zeta Beta and the Masons, it is not for this Court to counteract by judicial decision what we conclude is the congressional intent to treat national college fraternities in a manner different from fraternal organizations such as the Masons. Congress has "broad latitude in creating classifications and distinctions in tax statutes." *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547-548 (1983).

Zeta Beta argues that its existing tax exemption under section 501(c)(7) does not preclude it from receiving an additional tax-exempt classification under section 501(c)(10), if it meets the qualifications thereof. As we stated earlier, in some situations an organization may qualify for tax exemption under a number of paragraphs of section 501(c). We have concluded, however, that national college fraternities are intended by Congress to be treated as exempt under section 501(c)(7) and not under section 501(c)(10).

Zeta Beta concedes that college fraternities historically have been granted tax-exempt classification under section 501(c)(7). If Congress had intended in 1969 to change that policy and to allow national college fraternities to be exempt under section 501(c)(10), it is reasonable to conclude that some mention of such a policy change would have been made in the extensive legislative history that accompanied the passage of the Tax Reform Act of 1969. To the contrary, that history (as well as the legislative history accompanying the 1976 amendments to section 501(c)(7)) reiterates the long-standing treatment of national college fraternities as tax-exempt organizations under section 501(c)(7) and the predecessors therof.

We also note the agreement among commentators that national college fraternities and sororities are tax-exempt social clubs described in section 501(c)(7) and are subject to the unrelated business income tax on investment income. See, e.g., P. Treusch & N. Sugarman, Tax-Exempt Charitable Organizations, ch. 3, sec. E2.03 at 128 (1983); B. Hopkins, The Law of Tax-Exempt Organizations, sec. 18.1, at 303 (1983).

The prohibition in section 1.501(c)(10)-1, Income Tax Regs., on national college fraternities obtaining their tax exemption under section 501(c)(10) is a valid and reasonable interpretation of the statutory provisions as explained above. Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the language, history, and purpose of a statute. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); *Kampel v. Commissioner*, 634 F.2d 708, 711 (2d Cir. 1980), affg. 72 T.C. 827 (1979).

In light of the congressional intent that national college fraternities qualify for their tax-exempt status under section 501(c)(7), and not section 501(c)(10), we agree with respondent that Zeta Beta is not an organization described in section 501(c)(10), and that Zeta Beta is taxable on its investment income under section 512(a)(3)(A).

Accordingly,

*Decision will be entered for the respondent.*